[No. B152028. Second Dist., Div. Three. Apr. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL JORDAN, Defendant and Appellant.

[No. B155863. Second Dist., Div. Three. Apr. 30, 2003.]

In re PAUL JORDAN on Habeas Corpus.

**COUNSEL**

Carol S. Boyk, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz, Ron A. Jakob and Xiomara Costello, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Paul Jordan appeals the judgment entered following conviction by jury of possession for sale of cocaine base. (Health & Saf. Code, § 11351.5.) The trial court found Jordan had one prior conviction within the meaning of the "Three Strikes" law and had served one prior prison term within the meaning of Penal Code section 667.5, subdivision (b).[1] The trial court sentenced Jordan to a term of 10 years in state prison.

We reject Jordan's claim the People have a constitutional obligation to disclose complaints about police officer misconduct where the only evidence of such misconduct is defense testimony at an unrelated criminal trial. We

---

[1]Subsequent unspecified statutory references are to the Penal Code.

also reject various other claims raised by Jordan, order the abstract of judgment corrected in minor respects and remand the case with directions to strike or impose the prior prison term enhancement.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Prosecution's evidence.*

On October 23, 2000, at approximately 7:00 p.m., Long Beach Police Detective Able Morales, accompanied by Detectives Burns and Gonzales, arrested Jordan in the stairwell of an apartment complex frequented by gang members and marked by drug sales. Morales found car keys and a plastic baggie where Jordan had been seated in the stairwell. The baggie contained six smaller bags of cocaine base with a net weight of 1.26 grams. At the scene, Jordan waived his rights per *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974], and indicated the car keys on the stairwell operated his Buick Regal, which was parked approximately half a mile away.

As Morales drove Jordan to the area where Jordan said the Regal was parked, Jordan pointed out the Regal, which was being driven by his girlfriend, Saphine Ross. Ross denied Jordan had driven the Regal that day and said Jordan drove a green Volvo. When Morales asked Jordan the whereabouts of the Volvo, Jordan tried to mislead Morales as to its location and indicated the Volvo was parked on Gaviota Avenue, which is some distance from the scene of the arrest. However, Morales found a green Volvo parked around the corner from the apartment complex and opened it with one of the keys recovered in the stairwell. In the Volvo, Morales found approximately seven grams of cocaine base that was similar in appearance to the cocaine base recovered in the stairwell.

2. *Defense evidence.*

The defense theory of the case was that the cocaine found in the stairwell belonged to persons other than Jordan. Numerous residents of the apartment complex testified many other individuals had been present in the area of the stairwell immediately prior to Jordan's arrest and some of these individuals were members of the Insane Crips and Rolling 20's Crips who had been selling drugs. All of these individuals fled when the detectives approached. One defense witness, Nathaniel Ford, admitted he and another individual named Cedric had been selling drugs at the apartment complex prior to Jordan's arrest.

Saphine Ross testified Jordan drove the Regal to the apartment complex and waited there with Ross's property, including the keys to the Volvo,

while Ross drove the Regal to her apartment to get a security device she needed to start the Volvo. Jordan did not drive the Volvo that day and the cocaine in the Volvo belonged to Ross.

### 3. *Rebuttal evidence.*

During the defense portion of the case, the trial court reconsidered a pretrial ruling the People could not present evidence of Jordan's gang affiliation. The trial court ruled that, in order to rebut the defense evidence that gang members, not Jordan, possessed the cocaine found in the stairwell, the prosecutor could cross-examine Ford about gang members selling drugs at the apartment complex and could present rebuttal evidence that Jordan was a gang member. Pursuant to this ruling, Detective Morales testified that, at the time of booking in this case, Jordan told another police officer he was a member of the Insane Crips gang. Morales described the tattoos on Jordan's body including "OG" on his right forearm, "Insane Gangsta" on his chest, "Crip" on his left forearm.

Long Beach Police Detective Sean Hunt, an expert on the Insane Crips gang, testified Jordan told him, shortly before Jordan was booked in this case, that Jordan was "Big Wino" from Insane Crips.

At the prosecutor's request, and over defense counsel's objection, Jordan displayed the tattoos on his upper torso to the jury.

## CONTENTIONS

In a petition for writ of habeas corpus, which this court previously ordered to be considered concurrently with this appeal, Jordan contends the People's failure to provide information that could have been used to impeach Detective Hunt's rebuttal testimony violated *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] and requires reversal.

In the appeal, Jordan contends the trial court erroneously denied a motion for new trial, improperly admitted gang evidence and should not have instructed the jury on refusal to deliberate. Jordan further requests this court to conduct an independent review of the trial court's in camera ruling on his pretrial motion to discover citizen complaints against the arresting officers. (*People v. Mooc* (2001) 26 Cal.4th 1216 [114 Cal.Rptr.2d 482, 36 P.3d 21].)

The People contend the judgment must be modified in various respects.

## DISCUSSION

1. *The People had no duty to disclose complaints of police misconduct made by defendants at other criminal trials.*

    a. *Jordan's contention.*

Jordan contends the prosecution had a constitutional duty to discover and disclose to the defense two citizen complaints against Detective Hunt that could have been used to impeach Hunt's rebuttal testimony that Jordan admitted gang membership shortly before Jordan was booked in this case. Both of these complaints consisted of defense testimony, given at other criminal trials, alleging that Hunt had fabricated evidence of possession of cocaine.

The first complaint is based on the testimony of the defendant in *People v. Gill* (1997) 60 Cal.App.4th 743 [70 Cal.Rptr.2d 369]. In that case, at a jury trial, the defendant, Fletcher Gill, testified Hunt used excessive force during a detention and fabricated evidence of possession of narcotics to justify the use of force. (*Id.* at pp. 746, 750.) Gill filed an affidavit in support of Jordan's petition for writ of habeas corpus in this case in which Gill averred that on another occasion, Gill witnessed Hunt use excessive force against a female arrestee. Gill filed a citizen complaint with respect to that incident but did not file a complaint with respect to his own case until after it had been reversed on appeal.

The second complaint against Detective Hunt is based on the testimony of Kevin Jackson, the defendant in *People v. Jackson* (Super. Ct. L.A. County, No. NA048477). Jackson testified in his own defense at a jury trial on June 21, 2001, approximately one month before the trial in this case, that Detective Hunt approached him on the street shortly after his release from prison, threatened Jackson by reason of his parole status and asked Jackson to identify gang members from a book of photographs. When Jackson refused, Hunt threatened to have Jackson imprisoned for life. Two months later, Hunt and another officer stopped Jackson. Hunt allegedly planted cocaine on Jackson and falsely accused Jackson of possession of cocaine resulting in Jackson's conviction.[2] Jackson testified at his trial he did not file a citizen complaint against Hunt.

---

[2]This court has previously granted Jordan's request to add to the evidence submitted in support of the petition for writ of habeas corpus a reporter's transcript of Jackson's trial testimony in *People v. Jackson, supra,* No. NA048477. Jackson's conviction of possession of cocaine in that case is on appeal in *People v. Jackson,* No. B155262.

Jordan claims knowledge of these complaints of misconduct must be imputed to the prosecution team, given that *Gill* is a published case and the People were a party to both cases.[3] Jordan asserts the prosecution had a duty to disclose these complaints and, had they been disclosed, they would have undermined Hunt's credibility and showed that Hunt had a history of mistreating suspects and fabricating evidence in drug cases. At oral argument before this court, Jordan's counsel alternatively suggested the duty to disclose might be limited to cases originating in the Long Beach Judicial District, the Long Beach Police Department and the Long Beach Office of the District Attorney's Office.

b. *Applicable legal principles.*

Jordan's contention arises at the intersection of California's statutory scheme for reciprocal discovery in criminal cases, the prosecutor's constitutional duty to provide material evidence to the defense and the statutory scheme for discovery of citizen complaints in peace officer personnel files. We review the relevant principles in each of these areas before turning to Jordan's claim.

(1) *General rules related to discovery in criminal cases.*

California's criminal discovery statutes, which were enacted as part of Proposition 115 (Crime Victims Justice Reform Act), are found at section 1054 et seq. These provisions set forth an almost exclusive procedure for discovery in criminal cases. (*In re Littlefield* (1993) 5 Cal.4th 122, 129 [19 Cal.Rptr.2d 248, 851 P.2d 42]; *People v. Superior Court (Barrett)* 80 Cal.App.4th 1305, 1311-1312 [96 Cal.Rptr.2d 264]; *People v. Hammond* (1994) 22 Cal.App.4th 1611, 1619 [28 Cal.Rptr.2d 180].) Under this statutory scheme, the prosecutor must disclose: "(a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence . . . of the offenses charged. [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. [¶] (e) Any exculpatory evidence. . . ." (§ 1054.1.) Persons the prosecutor " 'intends to call as witnesses at trial' " include witnesses the prosecutor intends to call on rebuttal. (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 375 [285 Cal.Rptr. 231, 815 P.2d 304].)

The defense has a more limited duty to disclose the names and addresses of witnesses, the defense intends to call at trial, other than the defendant,

---

[3]At oral argument, counsel for Jordan indicated a third similar complaint of misconduct recently had been leveled at Hunt in an unpublished appellate case.

relevant written reports or statements of the witnesses, and any real evidence the defense intends to introduce at trial. (§ 1054.3, subds. (a), (b).)

The required disclosures must be made at least 30 days prior to the trial or immediately if the information becomes known within 30 days of trial, unless good cause is shown why disclosure should be denied, restricted, or deferred. (§ 1054.7.)

■ A trial court may enforce the discovery provisions by ordering immediate disclosure, contempt proceedings, continuance of the matter, and delaying or prohibiting a witness's testimony or the presentation of real evidence. (§ 1054.5, subds. (b) & (c); *People v. Superior Court (Barrett), supra,* 80 Cal.App.4th at p. 1313.) However, the exclusion of testimony is not an appropriate remedy absent a showing of significant prejudice and willful conduct motivated by a desire to obtain a tactical advantage at trial. (*People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1758 [28 Cal.Rptr.2d 325].)

### (2) *Constitutional obligation to disclose exculpatory evidence.*

■ *Brady v. Maryland, supra,* 373 U.S. 83, held the prosecution must disclose to the defense any evidence that is "favorable" to the accused and "material" on the issue of guilt or punishment. (*Ibid.; Kyles v. Whitley* (1995) 514 U.S. 419, 432-433 [115 S.Ct. 1555, 1564-1565, 131 L.Ed.2d 490]; *United States v. Bagley* (1985) 473 U.S. 667, 682 [105 S.Ct. 3375, 3383-3384, 87 L.Ed.2d 481]; *In re Brown* (1998) 17 Cal.4th 873, 879 [72 Cal.Rptr.2d 698, 952 P.2d 715].) *United States v. Agurs* (1976) 427 U.S. 97, 107 [96 S.Ct. 2392, 2399, 49 L.Ed.2d 342], extended *Brady* to impose a duty on prosecutors to volunteer exculpatory matter to the defense even without a request for such material.

A prosecutor's duty under *Brady* to disclose material exculpatory evidence applies to evidence the prosecutor, or the prosecution team, knowingly possesses or has the right to possess. The prosecution team includes both investigative and prosecutorial agencies and personnel. (See *In re Brown, supra,* 17 Cal.4th at p. 879; *People v. Robinson* (1995) 31 Cal.App.4th 494, 499 [37 Cal.Rptr.2d 183].) The prosecution must disclose evidence that is actually or constructively in its possession or accessible to it. (*People v. Kasim* (1997) 56 Cal.App.4th 1360, 1380 [66 Cal.Rptr.2d 494].) The important determination is whether the person or agency has been "acting on the government's behalf" (*Kyles v. Whitley, supra,* 514 U.S. at p. 437 [115 S.Ct. at p. 1567]) or "assisting the government's case" (*In re Brown, supra,* 17 Cal.4th at p. 881).

The obligation to disclose favorable evidence under *Brady* includes evidence that serves to impeach the testimony of a prosecution witness. (*Strickler v. Greene* (1999) 527 U.S. 263, 280-281 [119 S.Ct. 1936, 1947-1948, 144 L.Ed.2d 286]; *United States v. Bagley, supra,* 473 U.S. at p. 676 [105 S.Ct. at pp. 3380-3381].) Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (*United States v. Bagley, supra,* 473 U.S. at p. 682 [105 S.Ct. at p. 3383].) Although *Brady* disclosure issues may arise in advance of, during, or after trial, the test is always the same. (*United States v. Agurs, supra,* 427 U.S. at pp. 107-108 [96 S.Ct. at pp. 2399-2400].)

The constitutional duty that requires prosecutors to disclose exculpatory evidence to a criminal defendant under *Brady* is independent from the statutory duty to provide discovery under section 1054.1. (*Izazaga v. Superior Court, supra,* 54 Cal.3d at p. 378; § 1054, subd. (e).) Thus, evidence that is material under *Brady* must be disclosed to the defense, notwithstanding any failure of the defense to enforce its statutory right to discovery.

### (3) *Pitchess motions.*

Since 1974, California law enforcement agencies have been required to "establish a procedure to investigate [citizens'] complaints" against officers in their employ. (§ 832.5, subd. (a).) In *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], the Supreme Court held criminal defendants have a right to discover citizen complaints of misconduct found in peace officer personnel files. In 1978, the Legislature codified *Pitchess* in Penal Code sections 832.7 and 832.8, and Evidence Code sections 1043 through 1045. Defendants seeking discovery of citizen complaints must follow these statutory procedures.[4] These provisions " 'carefully balance[] two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense.' " (*Alford v. Superior Court* (2003)

---

[4] " 'Evidence Code sections 1043 and 1045 set out the procedures for discovery in detail. As here pertinent, section 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that such motion shall include, inter alia, "(2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records." [¶] '. . . Once good cause for discovery has been established, [Evidence Code] section 1045 provides that the court shall then examine the information "in chambers". . . , and shall *exclude* from disclosure several enumerated categories of information . . . . (Evid. Code, § 1045, subd. (b).)' " (*Alford v. Superior Court, supra,* 29 Cal.4th at p. 1038.)

29 Cal.4th 1033, 1039 [130 Cal.Rptr.2d 672, 63 P.3d 228], quoting *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81-84 [260 Cal.Rptr. 520, 776 P.2d 222].)

The *Pitchess* procedure is the sole means by which citizen complaints may be obtained. (*Garden Grove Police Department v. Superior Court* (2001) 89 Cal.App.4th 430 [107 Cal.Rptr.2d 642]; 432; *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1024 [101 Cal.Rptr.2d 379].) In order to obtain discovery of citizen complaints, the People, as well as the defendant, must comply with the statutory requirements for disclosure of citizen complaints. (*Alford v. Superior Court, supra,* 29 Cal.4th at p. 1046 [prosecutor does not have a right to be heard in *Pitchess* proceedings or to receive material ordered disclosed after a successful motion]; *People v. Superior Court (Gremminger)* (1997) 58 Cal.App.4th 397, 407 [67 Cal.Rptr.2d 910].)

The " ' "*Pitchess* process" operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information.' " (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 14 [124 Cal.Rptr.2d 202, 52 P.3d 129].) Thus, although *City of Los Angeles v. Superior Court, supra,* 29 Cal.4th 1, upheld a statutory provision which excepted disclosure of citizen complaints of police misconduct that occurred " 'more than five years' before" the charged crime, it also acknowledged the prosecutor's "duty to seek and assess such information and to disclose it if it is constitutionally material." (*City of Los Angeles v. Superior Court, supra,* at p. 12.)

   c.  *Application of these principles to this case reveals no violation of due process.*

Of initial interest are the statutory provisions requiring the People to disclose the names and addresses of persons they intend to call as witnesses at trial. The prosecutor must disclose the identity of rebuttal witnesses, like Hunt, either 30 days prior to trial or as soon as the prosecutor reasonably anticipates the witness will be called. (*People v. Tillis* (1998) 18 Cal.4th 284, 290 & fn. 3 [75 Cal.Rptr.2d 447, 956 P.2d 409]; *Izazaga v. Superior Court, supra,* 54 Cal.3d at pp. 375-376 & fn. 11.)

Here, as noted above, the trial court initially ruled the prosecutor could not elicit evidence of Jordan's gang affiliation. When the trial court reversed that ruling, based primarily on the testimony of defense witness Ford, the prosecutor indicated the People would call Detective Morales to testify with respect to Jordan's gang membership and there would also be expert testimony from Hunt, if Hunt were available.

Jordan did not claim a violation of the People's statutory obligation to disclose witnesses or seek any of the available remedies for failure to comply with discovery, such as a continuance to address Hunt's testimony or to conduct *Pitchess* discovery with respect to Hunt. Jordan's failure to object on these grounds is understandable in light of the trial court's pretrial ruling excluding evidence of Jordan's possible gang affiliation. Based thereon, the prosecutor could not reasonably have anticipated calling Hunt until the defense presented its case and the trial court reversed its earlier ruling. Indeed, given that defense counsel expressed surprise at Ford's testimony, the prosecutor could not reasonably have anticipated Ford would admit selling drugs at the apartment complex. Thus, no discovery violation can be shown.

Instead, Jordan argues that because a *Pitchess* motion with respect to Hunt could not have been timely filed, the prosecutor had an obligation under *Brady* to provide evidence that could have been used to impeach Hunt. However, the prosecutor's constitutional obligation under *Brady* to disclose material evidence to the defense does not vary depending on whether the People call a witness during the case-in-chief or rebuttal or whether Jordan could have sought discovery under *Pitchess* with respect to Hunt before Hunt was called as a witness. The *Brady* obligation on the part of the prosecution remains constant. (*United States v. Agurs, supra,* 427 U.S. at pp. 107-108 [96 S.Ct. at pp. 2399-2400].) ▮ Accordingly, the appropriate consideration is whether the defense evidence offered by Gill and Jackson at their respective trials constitutes favorable material evidence that should have been disclosed to Jordan under *Brady*.

We conclude it does not. ▮ Notwithstanding the prosecutor's duty to disclose material evidence to the defense, " '[t]here is no general constitutional right to discovery in a criminal case, and *Brady* [*v. Maryland* [*, supra,*] 373 U.S. 83 . . .] did not create one . . . .' " (*Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1135 [99 Cal.Rptr.2d 149, 5 P.3d 203], quoting *Weatherford v. Bursey* (1977) 429 U.S. 545, 559 [97 S.Ct. 837, 846, 51 L.Ed.2d 30].) Thus, "the prosecution has no general duty to seek out, obtain, and disclose all evidence that might be beneficial to the defense." (*In re Littlefield, supra,* 5 Cal.4th at p. 135, italics omitted.)

. ▮ The rule proposed by Jordan would run afoul of this tenet and would require the People to catalog the testimony of every witness called by the defense at every criminal trial in the county, cull from that testimony complaints about peace officers and disclose these complaints to the defense whenever the People called the peace officer as a witness at another trial. Even in a computer age, such a task is daunting, especially in a major

metropolitan area. Jordan's suggestion the duty be limited to the Long Beach Judicial District does not cure the problem of collecting, storing and disseminating such a vast amount of information.

Additionally, a rule requiring disclosure of defense complaints made at unrelated criminal trials would transform the prosecution into a "*Brady* vessel" of information that had to be disclosed every time the People called a peace officer witness. (See *Alford v. Superior Court, supra,* 29 Cal.4th at p. 1056, fn. 8 (conc. & dis. opn. of Baxter, J.).) Thus, the fact the People may have been a party to every criminal case prosecuted in the county does not give rise to a duty to collect evidence for the defense.

Further, even if the logistical problems presented by Jordan's proposed rule were overlooked, it does not appear that a claim of peace officer misconduct, asserted only at an unrelated criminal trial by a defendant trying to avoid criminal liability, constitutes favorable evidence within the meaning of *Brady.* Defense attacks upon the integrity of a police officer are a common feature of criminal trials. Given that the proponent of the evidence has a strong incentive to avoid conviction, such complaints do not immediately command respect as trustworthy or indicate actual misconduct on the part of the officer.[5] Even if the unrelated trial results in acquittal, given the prosecution's burden of proving the charged offense beyond a reasonable doubt, defense complaints about a peace officer witness may not have been a determinative factor in the outcome.

The lack of trustworthiness in defense complaints about peace officers advanced only at an unrelated trial is highlighted by comparing such complaints with citizen complaints of officer misconduct which the officer's employer has sustained as true. Justice Moreno, dissenting in *City of Los Angeles v. Superior Court, supra,* 29 Cal.4th at page 28, observed that sustained citizen complaints of officer misconduct likely involve moral turpitude and thus contain admissible impeachment evidence under *People v. Wheeler* (1992) 4 Cal.4th 284, 295-297 [14 Cal.Rptr.2d 418, 841 P.2d 938]. Accordingly, such complaints should be disclosed under *Brady.* A similar conclusion cannot be reached with respect to complaints of the type Jordan asserts should have been disclosed here.

For all the foregoing reasons, we conclude the prosecutor had no constitutional obligation to discover and disclose to Jordan the defense evidence presented at the trials of *Gill* and *Jackson.*

---

[5] We do not mean to suggest, however, that defense complaints about peace officer witnesses advanced at unrelated criminal trials might not provide corroboration for a request for discovery under *Pitchess* in an appropriate case.

## 2. *No abuse of discretion in the denial of the motion for new trial.*

### a. *Background information.*

After the jury returned its guilty verdict, Jordan filed a motion for new trial. In a declaration filed in support of the motion, defense counsel indicated four jurors, including the foreperson and Juror No. 6, spoke to the prosecutor and defense counsel after the trial. When the prosecutor indicated the People would seek the maximum term because Jordan was on parole for robbery, the jurors indicated they were aware of that based on information contained in the police report. Both counsel expressed surprise at this revelation. Jordan sought a new trial based on the inadvertent submission to the jury of the police report. Defense counsel claimed prejudice in that Jordan had elected not to testify in his own defense primarily to avoid impeachment with his prior convictions.

In opposition to the motion, the prosecutor averred the juror who mentioned the parole information also stated that information did not play any role in the jury's deliberations and the foreperson confirmed that statement. The foreperson further indicated the jurors did not consider the parole information or Jordan's gang membership in reaching their verdict. The foreperson indicated the jury agreed Jordan would not have attempted to lead Detective Morales away from the Volvo if Jordan did not possess the cocaine it contained. When the foreperson made these statements, all of the jurors present nodded in agreement.

The trial court denied the motion and found, inter alia, the parole information had gone to the jury as the result of an "inadvertent error." Further, the People's evidence had been "convincing" and "persuasive." The trial court concluded, based on its knowledge of the case, that Jordan had failed to show prejudice.

### b. *Jordan's contention.*

Jordan contends the motion for new trial should have been granted because Jordan's trial testimony, which had been withheld to prevent the jury from learning of his parole status, would have altered the result of the trial. Jordan claims his testimony would have established an eight- to 10-minute delay between the time he was detained and the time Detective Morales found the cocaine, that he was only watching the keys to the Volvo for Ross, and that he told Morales he had been driving the Regal, not the Volvo. Jordan notes several jurors said they gave great weight to the fact Jordan directed Morales away from the Volvo, the jury deliberated for about

seven hours, and the jury sent three questions to the trial court before reaching a verdict. Jordan concludes he should be granted a new trial. (*People v. Clair* (1992) 2 Cal.4th 629, 668 [7 Cal.Rptr.2d 564, 828 P.2d 705].)

### c. *Resolution.*

■  " 'When, as in this case, a jury innocently considers evidence it was inadvertently given, there is no misconduct.' [Citation.] Rather, all that appears is ordinary error. . . . [¶] [W]ith ordinary error, prejudice must be shown and reversal is not required unless there is a reasonable probability that an outcome more favorable to the defendant would have resulted." (*People v. Clair, supra,* 2 Cal.4th at p. 668.)

■  With respect to Jordan's claim the inadvertent submission of the police report deprived him of the benefit he hoped to derive by not testifying, Jordan overlooks the fact he would have been cross-examined extensively and impeached with additional prior convictions had he testified. Further, the evidence Jordan asserts would have changed the result of the trial was presented to the jury through other defense witnesses. A resident of the apartment complex testified the cocaine was not found where Jordan had been seated, and Ross testified, contrary to her initial statement to Detective Morales, that Jordan had been driving the Regal, not the Volvo, and only had been watching the keys to the Volvo. Thus, Jordan's testimony would have been cumulative.

Moreover, according to the prosecutor's declaration, the jurors who spoke with counsel after the trial indicated no consideration had been given Jordan's parole status or his gang affiliation. Jordan did not object to the prosecutor's declaration and thus any objection under Evidence Code section 1150 has been waived. (*People v. Reyes* (1974) 12 Cal.3d 486, 506, fn. 2 [116 Cal.Rptr. 217, 526 P.2d 225] [defense counsel waived any objection to improper voir dire of the jury respecting what effect items excluded from evidence and mistakenly left in the jury room during deliberations may have had on the jury].)

Finally, even if the prosecutor's declaration is removed from the equation, the "brief and unemphatic" reference to Jordan's parole status does not require reversal. (*People v. Clair, supra,* 2 Cal.4th at p. 668.) The evidence of guilt on the charge of possession for sale of cocaine base was strong. The offense for which Jordan was on parole was not drug related and thus did not tend to suggest Jordan was predisposed to narcotics-related offenses. Thus, Jordan cannot show a reasonable probability of a more favorable outcome absent the inadvertent submission of the police report to the jury.

### 3. *Admission of gang evidence on rebuttal not an abuse of discretion.*

■ Evidence of gang membership, if only tangentially relevant, is inadmissible due to its highly inflammatory impact. (*People v. Cox* (1991) 53 Cal.3d 618, 660 [280 Cal.Rptr. 692, 809 P.2d 351]; *People v. Ruiz* (1998) 62 Cal.App.4th 234, 240 [72 Cal.Rptr.2d 572]; *People v. Maestas* (1993) 20 Cal.App.4th 1482, 1497-1498 [25 Cal.Rptr.2d 644].) Here, consistent with this rule, at the start of trial, the trial court ordered the People not to present evidence of Jordan's gang membership. Thereafter, Jordan presented numerous witnesses who testified individuals other than Jordan were selling drugs at the apartment complex immediately prior to Jordan's arrest. Defense witness Ford admitted he and another individual named Cedric had been selling drugs prior to Jordan's arrest. The prosecutor asked Ford, without objection from Jordan, whether a particular group sold drugs at the apartment complex. Ford responded both the Rolling 20's and the Insane Crip gang sold drugs there. Jordan objected only when the prosecutor asked the trial court to reverse its prior ruling and permit the People to present evidence that Jordan was a gang member and that he had gang tattoos. The trial court indicated its previous ruling had been based on the state of the record at that time. However, given the additional evidence that had been presented, the prosecutor now was entitled to cross-examine Ford about gang members selling drugs at the apartment complex and could present rebuttal evidence that Jordan was affiliated with a gang.

On appeal, Jordan contends the gang evidence was not probative of any fact in dispute because there was no allegation Jordan was selling drugs on behalf of a gang and Jordan never sought to prove he was not a gang member. Jordan notes this gang information improperly was elicited from Ford, in violation of the trial court's pretrial order to avoid this subject, by the prosecutor's question: "Is there any particular group that sells drugs at that location together?" Thereafter, in argument to the jury, the prosecutor emphasized the gang evidence by asserting the apartment complex was a place where gang members sold drugs, residents are afraid to report such activity for fear of retaliation and Jordan was a gang member who did not live at the apartment complex but had gone there to sell drugs.

Jordan claims this evidence was inflammatory and the order forcing him to disrobe, even after Detective Morales had described the tattoos, demeaned him in the eyes of the jury, which likely was affected adversely by this evidence. Jordan concludes he would not have been convicted absent the gang evidence.

■ We find no error in the trial court's admission of gang evidence on rebuttal. As noted, although the trial court initially ruled gang evidence

inadmissible, during the defense portion of the case Jordan presented evidence indicating gang members sold drugs in the area of the apartment complex. The prosecutor was entitled to rebut the inference, created by Jordan's defense, that the drugs found in the stairwell belonged to one of the gang members, not Jordan. Had the defense not sought to demonstrate that individuals other than Jordan were responsible for the drug sales at the apartment complex, the gang evidence would have remained inadmissible pursuant to the trial court's initial ruling. Jordan's defense opened the door to this rebuttal evidence. The trial court properly could conclude the probative value of the gang evidence increased during presentation of the trial to the point where it outweighed the risk of undue prejudice. Thus, no error appears in the admission of the gang evidence.

In any event, any error must be seen as harmless in that there is no reasonable probability of a more favorable result. The foreperson of the jury told the prosecutor the jury did not consider Jordan's gang affiliation in their deliberations. Although Jordan objects to this evidence on appeal as violative of the rule precluding evidence of a juror's mental process (*People v. Lewis* (2001) 26 Cal.4th 334, 388-389 [110 Cal.Rptr.2d 272, 28 P.3d 34]), Jordan did not object in the trial court and thus has waived any objection under Evidence Code section 1150 to the prosecutor's affidavit (*People v. Reyes, supra,* 12 Cal.3d at p. 506, fn. 2). Based on this affidavit, it is clear a result more favorable to Jordan is not reasonably probable.

Jordan also claims the People improperly "sandbagged" the defense with respect to the gang evidence. (*People v. Raley* (1992) 2 Cal.4th 870, 914 [8 Cal.Rptr.2d 678, 830 P.2d 712].) Jordan asserts this evidence, if it were to be admitted at all, should have been admitted during the prosecution's case-in-chief to prevent it from having unduly magnified significance. (*People v. Mayfield* (1997) 14 Cal.4th 668, 761 [60 Cal.Rptr.2d 1, 928 P.2d 485].)

As pointed out above, the trial court initially excluded gang evidence at Jordan's request. It thereafter reconsidered its ruling and permitted the prosecutor to introduce gang evidence on rebuttal. Thus, the People did not "sandbag" the defense.

In sum, the trial court did not abuse its discretion, or cause a miscarriage of justice, in reevaluating its initial ruling and concluding, midtrial, that the probative value of the gang evidence outweighed the danger of undue prejudice. (Evid. Code, § 352; *People v. Cain* (1995) 10 Cal.4th 1, 33 [40 Cal.Rptr.2d 481, 892 P.2d 1224].)

4. *CALJIC No. 17.41.1.*

The trial court instructed the jury, without objection, on juror misconduct based on refusal to deliberate in the words of CALJIC No.

17.41. Jordan contends CALJIC No. 17.41.1 violated his right to a trial by jury, jury unanimity and due process, impermissibly infringed on the secrecy and independence of the jury's deliberations, permitted majority jurors to coerce minority jurors by threatening to report disagreement as refusal to deliberate and improperly prevented the jury from considering notions of justice, oppression and fairness as applied to this case. Jordan asserts the error is a structural defect that defies analysis for prejudice and requires reversal.

These claims were rejected in *People v. Engelman* (2002) 28 Cal.4th 436, 444 [121 Cal.Rptr.2d 862, 49 P.3d 209], which was decided after the trial in this case. *Engelman* held CALJIC No. 17.41.1 does not infringe upon a defendant's federal or state constitutional right to a trial by jury or to the state constitutional right to a unanimous verdict. However, in the exercise of its supervisory powers, the Supreme Court directed CALJIC No. 17.41.1 not be given in future trials to avoid the risk the instruction might be misunderstood or used by one juror to "browbeat[]" other jurors or cause the trial court unnecessarily to intrude upon the secrecy of deliberations. (*People v. Engelman, supra,* at p. 445.) Nothing in the record of this case indicates any of these risks materialized. There was no evidence of dissension among the jurors, improper involvement of the trial court in the jury's deliberations or intimidation by the majority of a holdout juror. The fact the deliberations of the jury were relatively brief and uneventful indicates none of the jurors intended to nullify in favor of the defense. In sum, on this record, it would be pure speculation to suggest CALJIC No. 17.41.1 played a part in the determination of Jordan's guilt.

5. *Review of the trial court's in camera Pitchess rulings.*

Prior to trial, pursuant to *Pitchess v. Superior Court, supra,* 11 Cal.3d 531, Jordan sought discovery of the police personnel files of Detectives Morales, Gutierrez and Burns, the arresting officers identified in the police reports. The trial court granted the request as to Morales with respect to claims of false reports or perjury. The trial court thereafter conducted an in camera review of various police records but found none that had to be disclosed to the defense.

On appeal, Jordan asks this court to review the trial court's rulings at the in camera hearing. (*People v. Mooc, supra,* 26 Cal.4th at p. 1228.) The People concede Jordan is entitled to the requested review.

We directed the trial court to augment the record on appeal to include additional in camera proceedings relative to Jordan's *Pitchess* motion. (See

*People v. Mooc, supra,* 26 Cal. 4th 1216.) Having received and reviewed the augmented sealed reporter's transcript of the additional in camera proceedings held on January 3 and 6, 2003, we find no abuse of the trial court's discretion.

6. *The abstract of judgment must be corrected and the matter remanded for consideration of the prior prison term enhancement.*

The People contend the trial court imposed a laboratory analysis fee in an unauthorized amount, failed to impose a mandatory penalty assessment and improperly stayed a prior prison term enhancement. We address these claims seriatim.

a. *Laboratory analysis fee.*

The maximum laboratory analysis fee permitted by Health and Safety Code section 11372.5 is $50. The trial court imposed a laboratory analysis fee in the amount of $150. Thus, the laboratory analysis fee must be reduced to $50.

b. *Penalty assessment.*

Because the laboratory analysis fee is a fine, section 1202.4, subdivision (a)(2), requires a penalty assessment in the amount of $85. (*People v. Terrell* (1999) 69 Cal.App.4th 1246, 1256-1257 [82 Cal.Rptr.2d 231].) We shall direct the trial court to impose a penalty assessment in that amount.

c. *Prior prison term enhancements.*

The trial court struck one prior prison term enhancement and stayed the other. Prior prison term enhancements may be imposed or stricken but not stayed. (*People v. Jones* (1992) 8 Cal.App.4th 756, 758 [10 Cal.Rptr.2d 502]; *People v. Irvin* (1991) 230 Cal.App.3d 180, 191-192 [281 Cal.Rptr. 195]; *People v. Eberhardt* (1986) 186 Cal.App.3d 1112, 1123 [231 Cal.Rptr. 387].)

The People suggest the one-year enhancement be added to Jordan's sentence because the trial court noted no factors in mitigation. (See *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1521 [56 Cal.Rptr.2d 749].) We decline the People's invitation. If anything, on this record, we would conclude the trial court intended to strike the prior prison term enhancement. However, a statement of reasons in the record must accompany the exercise of the great power to strike. (*People v. Orin* (1975) 13 Cal.3d 937, 934-944

[120 Cal.Rptr. 65, 533 P.2d 193].) Accordingly, we remand the case with directions to strike or impose the second prior prison term enhancement.

## DISPOSITION

The case is remanded with directions to strike or impose the prior prison term enhancement and, if necessary, to resentence Jordan. The abstract of judgment is ordered corrected to reflect a laboratory analysis fee in the amount of $50 and a penalty assessment attributable thereto in the amount of $85. In all other respects, the judgment is affirmed. The clerk of the superior court is directed to prepare and forward to the Department of Corrections an amended abstract of judgment. The petition for writ of habeas corpus is denied.

Croskey, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 23, 2003. Brown, J., did not participate therein.