Filed 10/4/16  P. v. Donvoan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEREMIAH JAMES DONOVAN,<br><br>    Defendant and Appellant. | F070345<br><br>(Super. Ct. Nos. CRF43024 and CRF42911)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tuolumne County.  Donald I. Segerstrom, Jr., Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

Appellant Jeremiah James Donovan was charged in two separate actions for possession of methamphetamine for sale (Health and Saf. Code, § 11378; case No.

CRF42911) and later assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); case No. CRF43024), plus enhancements in both cases. Donovan plead guilty to possession of drugs for sale, plus enhancements in case No. 42911. He later admitted enhancements and was convicted of assault with a deadly weapon in case No. 43024. At a combined sentencing hearing, Donavon received a total term 20 years and four months in prison. This appeal solely concerns his assault with a deadly weapon conviction. He raises three contentions on appeal: (1) the trial court abused its discretion by refusing to exclude the 911 call as a sanction for the prosecution's late production of it; (2) trial counsel was ineffective for failing to request instruction of the jury regarding the prosecution's late production; and (3) the evidence was insufficient to prove the great bodily injury enhancement allegation under section 12022.7, subdivision (a). We affirm.

## STATEMENT OF THE CASE

On April 14, 2014, the Tuolumne County District Attorney filed a first amended information charging Donovan with one count of assault with a deadly weapon (§ 245, subd. (a)(1)). The information alleged as enhancements that Donovan personally inflicted great bodily injury (§ 12022.7, subd. (a)); was on bail or his own recognizance at the time of the crime (§ 12022.1); had a prior "strike" conviction (§ 667, subds. (b)-(i)); had served a prior prison term (§ 667.5, subd. (b)); had a prior serious felony conviction (§ 667, subd. (a)(1)); and had suffered five previous felony convictions (§ 1203, subd. (e)(4)).

On September 3, 2014, a jury was empaneled. On that date, Donovan admitted the prior conviction and on-bail allegations. On September 5, 2014, the jury found Donovan guilty as charged of assault with a deadly weapon and found true the allegation that he personally inflicted great bodily injury.

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

At the combined sentencing hearing on October 20, 2014, the trial court sentenced Donovan to 20 years and four months in prison, with credit for 197 days in custody, and imposed various fines and fees; 18 years was imposed for the assault with a deadly weapon conviction, and a consecutive two years four months was imposed for possession of drugs for sale.

## STATEMENT OF FACTS

*Prosecution's Case*

On January 4, 2014 at 4:31 a.m., Zane Monroe called 911 from his girlfriend, Bonnie Palmer's, house. He said to the dispatcher, "[S]omeone just split the back of my head with a flashlight hella hard" and "I need an ambulance." He said "Miah" was the person who hit him and there was someone else with Miah. Monroe explained Miah accused him of stealing a sluice box. He then stated that he was "preparing to fight for [his] life" and was "s-s-seriously bleeding."

Sheriff's Deputy Brandon Green responded to the call. When he arrived, he noticed a large gash on the right side of Monroe's head. Monroe told Sheriff's Sergeant Eric Erhardt, who also responded to the call, that Miah hit him. Monroe was taken to the hospital where he received approximately seven staples for his injury.

Deputy Green then interviewed Palmer. She said she was asleep when she heard someone yelling outside of her residence. She tried to wake Monroe and then heard someone enter the house through the front door. She recognized the yelling voice to be Miah's, whom she also identified as Donovan. Monroe went to the living room and began arguing with Miah so loudly about a sluice box that Palmer told them to take it outside. After the men went outside, Palmer said she heard a loud clink and looked out the window and saw Miah standing over Monroe with a dark object which she thought may have been a flashlight. She did not actually see Monroe get hit. She then saw Miah and the person he was with walk down the driveway and then heard the sound of a quad or dirt bike start up.

3.

Deputy Green and Deputy Robert Nikiforuk then went to Donovan's house and noticed a sluice box and one or two dirt bikes out front. They made contact with his wife, Thoris Donovan, who said Donovan left around 1:30 a.m. that morning to go to a neighbor's house and was gone less than an hour. Deputy Nikiforuk then contacted Donovan, who said he had been home all night, except that he had gone to a friend's house down the street for a short period of time.

Sergeant Erhardt advised Donovan of his *Miranda*[2] rights. He denied going to Monroe's house and denied hitting him, and continued these denials even after being confronted with accusations by Monroe and Palmer. The officers found a flashlight next to the kitchen sink and located a gray plaid shirt matching the clothing description given by Monroe and Palmer.

Monroe was subpoenaed for trial, but did not appear. Instead, the prosecutor introduced the 911 call made by Monroe.

At trial, Palmer characterized Donovan as a "good friend," and stated they called each other cousins even though they were not related. On the witness stand, she denied knowing who Monroe was arguing with and stated that she did not know who hit him. She explained she had a bad memory because of head trauma from a car accident and also because of a brain tumor.

*Defense*

A recording of a call made by Monroe to defense counsel's office on August 8, 2014, was played for the jury. In the call, Monroe said he was aware the call was being recorded. He said all he remembered of the incident was that he was asleep in bed when he was struck in the back of the head. He denied knowing who hit him and what he was hit with. He said Palmer does not know what happened either, because she was asleep next to him. He said he told the police he fingered Donovan because he was angry with

---

[2]      *Miranda v. Arizona* (1966) 384 U.S. 436.

4.

him because of problems that they had in the past.  He admitted to taking a sluice box without consent, but nevertheless said he did not think Donovan would hit him with a "flashlight."  But immediately after saying that, he said that he did not know what hit him.  He then added he did not know Donovan to be violent.  He concluded by saying he was "sorry for all the trouble."

## DISCUSSION

I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO EXCLUDE THE 911 CALL

Donovan argues the 911 call should have been excluded by the trial judge as a sanction for disclosing it for the first time on the second day of trial. Respondent does not contest the 911 call was late disclosure, and Donovan does not contend the call is inadmissible hearsay. Rather, Donovan's sole contention is that the only appropriate sanction for the late disclosure was exclusion, and the trial court thereby abused its discretion by failing to do so. Donovan also argues that he was unfairly prejudiced by this error.

For the reasons discussed below, we hold the trial court did not abuse its discretion by refusing to exclude the 911 call. What sanction the prosecution deserved, if any, is not something we concern ourselves with; we need only say the failure to exclude was not an abuse of discretion. In any event, any error in failing to exclude the call did not prejudice Donovan because the balance of the evidence was sufficient to convict him.

A. Background

Monroe, the prosecution's main witness, was called as the first witness on the first day of trial. He did not appear, despite having been subpoenaed.  Unable to locate him, the prosecution obtained the 911 call from dispatch, transcribed it, and proffered it on the second day of trial.  The trial court expressed concerns about this being late discovery. The prosecution argued the 911 call was not a secret and the defense had plenty of time to ask for the call to be produced if they wanted to listen to it.  In addition, the

prosecution argued the defense was not prejudiced by the admission of the call because the defense would have done nothing different to prepare for trial had they been given notice the call was going to be played at trial.

The trial court found the call was admissible on its merits under the spontaneous utterance exception to the hearsay rule (Evid. Code, § 1240), but that its disclosure was late and a sanction was in order. However, the court did not think exclusion of the 911 call was an appropriate sanction.

Instead, the trial court surmised that "the appropriate sanction for the discovery violation is to allow [defense counsel] to use his tape where Mr. Monroe recants and says it wasn't Mr. Donovan. Then it's going to be up to the jury to decide what's true and what's not true. At least they are hearing both sides of the question and not just hearing one side and the other side is being excluded."

B. Applicable Law

Section 1054.1, the reciprocal discovery statute, "independently requires the prosecution to disclose to the defense, in advance of trial or as soon as discovered, certain categories of evidence 'in the possession of the prosecuting attorney or [known by] the prosecuting attorney ... to be in the possession of the investigating agencies.' [Citation.]" (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1133, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Among other items, the prosecution must disclose any "[r]elevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial" (§ 1054.1, subd. (f)). "Absent good cause, such evidence must be disclosed at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial. (§ 1054.7.)" (*Zambrano, supra,* at p. 1133.)

Upon a showing of a party's failure to comply with informal discovery procedures, a trial court "may make any order necessary to enforce the provisions" of the statute, "including, but not limited to, immediate disclosure, ... continuance of the matter, or any

6.

other lawful order." (§ 1054.5, subd. (b).) The trial court "may also 'advise the jury of any failure or refusal to disclose and of any untimely disclosure.'" (*People v. Verdugo* (2010) 50 Cal.4th 263, 280.) The court "may prohibit the testimony of a witness" as a discovery sanction, but "only if all other sanctions have been exhausted." (§ 1054.5, subd. (c); see *People v. Jordan* (2003) 108 Cal.App.4th 349, 358 (*Jordan*) ["[a] trial court may enforce the discovery provisions by ordering immediate disclosure, contempt proceedings, continuance of the matter, and delaying or prohibiting a witness's testimony or the presentation of real evidence," *but "the exclusion of testimony is not an appropriate remedy absent a showing of significant prejudice and willful conduct motivated by a desire to obtain a tactical advantage at trial*" (italics added)].)

C. Standard of Review

"A violation of section 1054.1 is subject to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836." (*People v. Verdugo, supra,* 50 Cal.4th at p. 280.) "We generally review a trial court's ruling on matters regarding discovery under an abuse of discretion standard. [Citation.] In particular, 'a trial court may, in the exercise of its discretion, "consider a wide range of sanctions" in response to a violation of a discovery order.'" (*People v. Ayala* (2000) 23 Cal.4th 225, 299.)

D. Analysis

There is no evidence in the record to indicate that the prosecution's failure to disclose the 911 call earlier constituted "willful conduct motivated by a desire to obtain a tactical advantage at trial," (*Jordan, supra,* 108 Cal.App.4th at p. 358) nor is there evidence Donovan was significantly prejudiced by the failure to exclude the evidence.
*No Showing of Willful Conduct*

The reason the prosecutor did not request the 911 call from the dispatcher is because it would have been cumulative evidence, given the fact that Monroe was already set to testify to the very things in the 911 call. The 911 call contained nothing exculpatory, nor did it contain anything that could not be brought out by available

7.

witnesses. The existence of the 911 call was also known by the defense, and this makes it impossible to say that the prosecution was trying to hide evidence. Although it was careless to not disclose the 911 call and have it prepared and ready to go in case it was needed at trial, this kind of carelessness does not rise to the level of willful conduct required by *Jordan*.

*No Showing of Significant Prejudice*

In addition to a showing of willful conduct, Donovan must also show that he was significantly prejudiced by the trial court's failure to exclude the 911 call. (*Jordan, supra,* 108 Cal.App.4th at 358.) This he cannot do. There was adequate evidence in the record to satisfy all elements of assault with a deadly weapon and to identify Donovan as the perpetrator. Deputy Green testified that both Monroe and Palmer identified Donovan as the perpetrator, and both were able to tell officers what he was wearing. Clothing matching this description was then found in Donovan's house. Palmer also told Deputy Green that she heard a dirt bike start up, and a dirt bike was found in front of Donovan's house. As to the assault, Palmer told Deputy Green she saw Donovan standing over Monroe with a dark object which might have been a flashlight, and one was later found at Donovan's house. We are satisfied that the other evidence besides the 911 call was sufficient for a reasonable jury to find Donovan guilty beyond a reasonable doubt.

Because there was no showing of willful conduct or significant prejudice to Donovan, the trial court did not abuse its discretion by opting for a sanction less onerous than exclusion.

## II. COUNSEL WAS NOT INEFFECTIVE IN NOT REQUESTING INSTRUCTION OF THE JURY REGARDING THE PROSECUTION'S LATE DISCOVERY

CALCRIM 306 instructs the jury that one party might have disadvantaged the other because of a discovery violation by the untimely production of material evidence. It provides in relevant part,

8.

"Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial.

"An attorney for the (People/defense) failed to disclose: _____ <describe evidence that was not disclosed> [within the legal time period.]

"In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure."

Donovan argues that, given the fact the trial judge found a sanctionable discovery violation on the part of the prosecution, CALCRIM 306 would have been entirely proper. However, defense counsel did not request it, and Donovan claims that constitutes ineffective assistance of counsel. We disagree.

A.  Applicable Law

The standard for evaluating a claim of ineffective assistance of counsel is well established. It requires a two-prong showing that counsel's representation was deficient based on an objective standard under prevailing professional norms, and that defendant was prejudiced by the deficient representation under a reasonable probability standard. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-696 (*Strickland*).) Absent a given reason, a court cannot presume incompetence, and the claim must be rejected on appeal. (*People v. Huggins* (2006) 38 Cal.4th 175, 206; *People v. Babbitt* (1988) 45 Cal.3d 660, 707.)

In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. (*People v. Earp* (1999) 20 Cal.4th 826, 896.)

Nevertheless, a reviewing court need not assess the two *Strickland* factors in order; and if the record reveals that the defendant suffered no prejudice, we may decide the issue of ineffective assistance of counsel on that basis alone. (*Strickland, supra,* 466

U.S. at p. 697.) If it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice that course should be followed. (*Ibid.*)

B. Analysis

Assuming for the sake of argument that defense counsel should have requested an instruction, we find no prejudice.

Even had the jury been charged with CALCRIM 306, it is highly unlikely it would have had any impact on the verdict because there were no inherent issues with the credibility of the phone call. We also do not see how the instruction could have possibly caused the jury to place less significance on the 911 call than they otherwise would because, as previously discussed, the 911 call was corroborated by substantial testimony given at trial.

Donovan has failed to convince this court that he was prejudiced by his counsel's failure to request the instruction. As both elements of *Strickland* have not been met, Donovan's ineffective assistance of counsel claim fails.

III. THE EVIDENCE WAS SUFFICIENT TO PROVE THE ENHANCEMENT ALLEGATION UNDER PENAL CODE SECTION 12022.7, SUBDIVISION (a), OF GREAT BODILY INJURY

Donovan contends the evidence was insufficient to show he inflicted great bodily injury for purposes of the section 12022.7, subdivision (a), enhancement.

A. Applicable Law

"'[G]reat bodily injury' means a significant or substantial physical injury." (§ 12022.7, subd. (f).) However, "the injury need not be so grave as to cause the victim '"permanent," "prolonged," or "protracted"' bodily damage." (*People v. Cross* (2008) 45 Cal.4th 58, 64.) "Proof that a victim's bodily injury is 'great' ... is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*Id.* at p. 66.)

10.

B. <u>Standard of Review</u>

""""Whether the harm resulting to the victim ... constitutes great bodily injury is a question of fact for the jury."""" (*People v. Escobar* (1992) 3 Cal.4th 740, 750.)  If there is sufficient evidence to sustain the jury's finding of great bodily injury, a reviewing court is bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding.  (*Ibid.*)

C. <u>Analysis</u>

It is reasonable to find a large gash is a significant and substantial injury, especially when it is to the head.  Also, Monroe's gash was deep enough to bleed profusely and require transportation to the hospital to receive approximately seven staples, and this is again consistent with a reasonable notion of significant and substantial injury.  We agree with respondent that Monroe's injuries were similar to, or more severe than, the injuries in *People v. Flores* (2013) 216 Cal.App.4th 251, 262-263, in which the victim received only four stitches which healed with no permanent scar.  The standard of review for this issue is highly differential, and we are satisfied there is sufficient evidence in the record to permit a reasonable jury to find great bodily injury.

**DISPOSITION**

The judgment is affirmed.

_____
FRANSON, J.

WE CONCUR:


_____
HILL, P.J.


_____
McCABE, J.*

_____

*        Judge of the Superior Court of Merced County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.