[No. F019426. Fifth Dist., Mar. 1, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN L. HAMMOND, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication with the exception of part I.

## COUNSEL

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Karen L. Ziskind, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ARDAIZ, J.—A jury convicted appellant of burglary (Pen. Code, § 459). In an immediately subsequent court trial on a bifurcated allegation that appellant had previously been convicted of the serious felony of robbery (see Pen. Code, §§ 667, 211, and 1192.7, subd. (c)), the court found that allegation to be true. Appellant was sentenced to a total term of 11 years in state prison. This consisted of a six-year upper term for the burglary plus a five-year enhancement for the prior conviction. He now appeals.

Prior to the presentation of evidence, and during the selection of appellant's jury, appellant moved for a mistrial after the prosecutor had utilized the first three of his ten peremptory challenges (see Code Civ. Proc., § 231, subd. (a)) to excuse three of the first six Hispanic-surnamed prospective jurors to be called to the jury box. Appellant contended that the prosecutor was "systematically excluding members of that particular ethnic group," a practice prohibited by the California Supreme Court's decision in *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]. The court held a hearing, out of the presence of the jury, on this motion. After hearing the prosecutor's explanations for having challenged each of the three prospective jurors, the court denied the motion and jury selection was completed.

The prosecutor presented his case-in-chief and appellant presented his defense. After the defense rested, respondent attempted to call a rebuttal witness, Officer John Souza, whose identity had not been disclosed to appellant during pretrial discovery. Appellant objected to Souza testifying, but the objection was overruled.

Appellant contends on this appeal that the court erred in denying his *Wheeler* motion and in permitting the testimony of a witness (Souza) whose identity had not been disclosed to appellant during pretrial discovery. After we first present a brief summary of the evidence presented at trial, we will then address each of appellant's contentions and explain why we find them to be without merit. We will affirm.

FACTS

On June 11, 1992, John Laudenslayer's home, located at 325 Wilson Street in Modesto, was burglarized. Laudenslayer locked the doors and left for work at approximately 8 a.m. that day. He returned home about 3 p.m. and noticed that his back door was damaged. It looked like it had been kicked in. After going through the house, he discovered about 20 items

missing, including guns, gun cases, bedding, a turquoise tank top, a leather bag with cologne, and a tent which had been set up in the backyard. The rope that fastened the tent to the stakes had been cut. Laudenslayer had never met appellant, did not know appellant, and had not given appellant permission to take any of these items.

Paul Chilles, who lived around the corner from Laudenslayer, happened to be looking out his window the same day, at approximately 3 p.m., when he saw two men sitting in a parked car, just around the corner from Laudenslayer's home. The two men sat there for awhile and then got out and went around and opened the trunk. One of the men took out a pair of jogging pants and put them on, and then went back and removed a tire iron which he put down the front of his pants. The man had a newspaper which he held in front of him as if to cover up the iron which was protruding from his pants. Chilles then saw the two men walk towards Wilson Street and disappear. They were one lot away from Laudenslayer's residence.

Chilles described the car the two men were in as a 1970's two-door, green and white Chevy. Chilles used binoculars to read the license plate number, which he wrote down and gave to the district attorney's office. The license plate number was 2 JWH 471. He described the two men as being in their middle to late thirties, Caucasian, about five feet, ten inches or six feet in height, one hundred seventy-five pounds, with light sandy-brown shoulder length hair. Appellant's stature and build, as well as his hair length, were similar to that of the two men Chilles saw that afternoon.

Another neighbor, Elmer Stevens, saw a similar appearing green and white Chevy enter the alley behind Laudenslayer's home around 3 p.m. on June 11th, and then saw it back out quickly. It came from the direction of Laudenslayer's house.

Vanessa Wann sold her 1974 two-door green and white Chevy Malibu to appellant in May or June of 1992. The license plate number was 2 JWH 471.

On June 23, 1992, appellant was involved in a car accident and was arrested shortly afterwards. The car he was driving was impounded and towed away. It was a 1974 Chevy Malibu, green and white in color, license plate number 1 JWH 471.[1]

A search warrant was obtained and the trunk of the vehicle was searched. Laudenslayer was present at the time and identified a number of the items in

---

[1]Officer Rhea testified concerning the license plate number of the car. It appears that he misspoke the first digit of the number, indicating that it was "1" while the rest of the evidence established that the license plate number of that car was 2 JWH 471.

the trunk as property which was taken from his house on June 11th. These items included a three-man blue tent, a shirt, and a leather bag. In addition, an envelope was seized bearing the name "Nelva Richardson for Stephen Hammond" and an address of 2708 Joy Avenue, Ceres. The envelope was located among the numerous items stored in the trunk. Police investigation of Laudenslayer's house determined that his back door had been pried open with a crowbar or a tire iron.

Appellant did not testify, but called one witness in support of his defense. Ricky Vaughn, a long-time friend of appellant, testified that he drove appellant's car a couple of times in June of 1992, and on one occasion drove appellant to Gardner's Cove and dropped him off for a couple of days so that appellant could go fishing. Vaughn parked the car at his own mother's house and at appellant's mother's house. Three or four other people, none of whom Vaughn identified by name, also drove the car. Vaughn was impeached with six prior convictions, including two for burglary and two for robbery. He was also asked whether he had a third burglary conviction and replied "I don't recall."[2] He and appellant were both inmates in the county jail in July of 1992, and Vaughn spoke to appellant there. Vaughn did not at first volunteer to testify for appellant, but agreed to do so when appellant's lawyer asked him to.

Appellant exhibited his tattooed arms to the jury.

In rebuttal, respondent called Officer Souza, a Ceres police officer. Souza testified that on June 11, 1992, at approximately 12:50 a.m., he made a traffic stop, and appellant was in the car. Appellant was driving an older model Chevy Malibu, green and white in color, license plate number 2 JWH 471. The stop was made on Herndon Road about a mile and a half north of Joy Street in Ceres. He recognized appellant because he had stopped him in the same car about a week earlier.

## I.

### *Appellant's Wheeler Motion**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2]No evidence of a third burglary conviction was introduced.

*See footnote, *ante*, page 1611.

## II.

### *Testimony of Witness Whose Identity Was Not Disclosed in Pretrial Discovery*

Appellant contends that the court erred in permitting Officer Souza to testify as a rebuttal witness because Souza's identity was not disclosed to appellant during pretrial discovery. We disagree.

A pretrial conference was held on the afternoon of Tuesday, November 24, 1992. At that time appellant's trial counsel advised the deputy district attorney that the defense intended to call Ricky Vaughn as a witness. The defense also gave the deputy district attorney a report prepared by an investigator. The report was apparently never offered into evidence at trial and is not a part of the record on this appeal, but it was described by appellant's trial attorney at the trial as being a report "of what the investigator learned from Mr. Vaughn." Our record on appeal contains no additional information about what this report said, except that the prosecutor stated that "the date of that report is September 30th of 1992." He added that "I am at a loss to understand why the public defender did not relate that report to us in a timely fashion instead of waiting two months." November 24 was the Tuesday before Thanksgiving. At the pretrial conference the court confirmed that the trial was set for 9:30 a.m. on the following Monday, November 30. On Monday, November 30, the jury was selected. On Tuesday, December 1, all of the prosecution's case-in-chief was presented. The defense then presented the testimony of Vaughn, who told the jury that he borrowed appellant's car "a couple of times, to be exact" in June of 1992. He said that he could not recall how long or precisely when he used the car, but that on one of those occasions he used the car "probably for a half a day." On another occasion he took appellant to go fishing, dropped him off at Gardner's Cove and then picked him up "a couple days" later. During this "couple days" Vaughn had the car, he and "three, four" other unnamed people drove it. On Wednesday, December 2, appellant's trial attorney had appellant display his arm tattoos to the jury. The defense then rested. The prosecution then called Officer Souza in rebuttal. After Souza was sworn and stated his name and occupation, appellant objected and stated that the "prosecution has not informed me of this witness or what this witness might testify to." He added that Souza's testimony would be "clearly in violation of the reciprocal discovery order in this case."[8] At a hearing held outside of the presence of the jury, the prosecutor explained:

---

[8]The record does not disclose what the "reciprocal discovery order in this case" said. The parties appear to assume that the reciprocal discovery order required them to comply with Penal Code sections 1054 through 1054.7. We do likewise.

"MR. MANER: This witness is offered as a rebuttal witness to rebut the testimony of Ricky Don Vaughn. We didn't hear his testimony, Your Honor, as you know, until late yesterday afternoon. I couldn't decide what rebuttal witnesses I was going to call, if any, until I heard his testimony.

"After hearing his testimony, I thought it would be a good idea to check the field identification cards of several neighboring police departments to see if any police officer had stopped the defendant in the car in question at around the time of the crime.

"One of our investigators, John Molidor, who actually is present in court, made some phone calls and determined from the Ceres Police Department that there was a stop of the defendant on June 11th at around 12:50 a.m., few hours, 15 hours or so before the burglary, by Officer Souza here.

"I did not meet with Officer Souza until about five minutes before 10:00 o'clock when he showed up in court. We faxed a subpoena over to the Ceres Police Department late last night or late yesterday afternoon, around 4:00 or so, to try to get him over here. I wasn't even sure if he was going to show until he actually appeared. I wasn't sure what his testimony was going to be beyond the fact that, 'I stopped the car with the defendant in it,' until this morning when I met with him at five minutes to 10:00. So we just found out."

The court overruled appellant's objection and expressly found "there has been no violation of the discovery order."[9] The court ruled that Souza would be permitted to testify that he had stopped the 1974 Malibu at approximately 12:50 a.m. on the date of the burglary (about 14 hours before the burglary) and had also stopped the Malibu about 1 week prior to that, and that on both occasions appellant had been in the car. The court would not allow Souza to testify about any of the details of those stops, such as that the June 11 stop took place near a 7-Eleven store which Souza suspected appellant might have been trying to rob, or that the June 3 stop was for speeding, was at 1:50 a.m. and was also near a 7-Eleven store, and that Souza on June 3 found a needle and syringe in appellant's possession.

Appellant then argued that he had a right to make a motion to suppress any testimony by Officer Souza about what Souza had observed. The court denied appellant's request, and Souza then testified before the jury. After Souza testified, the jury heard closing arguments, was instructed by the judge, and returned a guilty verdict after less than two hours of deliberations.

Slightly more than a month after appellant's trial ended, appellant moved for a new trial. He contended that he was entitled to a new trial because the

---

[9]See footnote 8, *ante.*

court had erred in refusing to permit him to move to suppress Souza's testimony. On January 22, 1993, the court held a hearing on appellant's motion for a new trial, and ordered that appellant be afforded the opportunity to make a motion to suppress. A suppression hearing was held on February 18, 1993, and appellant's motion to suppress was denied. Appellant does not now contest the denial of his motion to suppress, but nevertheless contends that the court erred in ruling that the discovery order had not been violated and in permitting Souza to testify.

## A.  Criminal Discovery

On June 5, 1990, the electorate passed an initiative measure designated on the ballot as Proposition 115 and entitled the "Crime Victims Justice Reform Act." Certain provisions of this measure, codified at Penal Code sections 1054 through 1054.7,[10] authorize and govern the conducting of reciprocal discovery in criminal cases. ▮  All such discovery is now "governed exclusively by" and "barred except as provided by" these statutes. (*In re Littlefield* (1993) 5 Cal.4th 122, 129 [19 Cal.Rptr.2d 248, 851 P.2d 42].) The prosecuting attorney's duty to disclose materials and information to the defense is governed by section 1054.1, which states:

"The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies:

"(a)  The names and addresses of persons the prosecutor intends to call as witnesses at trial.

"(b)  Statements of all defendants.

"(c)  All relevant real evidence seized or obtained as a part of the investigation of the offenses charged.

"(d)  The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial.

"(e)  Any exculpatory evidence.

"(f)  Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the

---

[10]All statutory references are to the Penal Code unless otherwise stated.

case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

A defendant's duty of disclosure is set forth in section 1054.3, which states:

"The defendant and his or her attorney shall disclose to the prosecuting attorney:

"(a)   The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial.

"(b)   Any real evidence which the defendant intends to offer in evidence at the trial."

Time limitations governing disclosures are set forth in section 1054.7. That section states:

"The disclosures required under this chapter shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred. If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred. 'Good cause' is limited to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement.

"Upon the request of any party, the court may permit a showing of good cause for the denial or regulation of disclosures, or any portion of that showing, to be made in camera. A verbatim record shall be made of any such proceeding. If the court enters an order granting relief following a showing in camera, the entire record of the showing shall be sealed and preserved in the records of the court, and shall be made available to an appellate court in the event of an appeal or writ. In its discretion, the trial court may after trial and conviction, unseal any previously sealed matter."

The provision governing the enforcement of discovery rights and obligations is section 1054.5, which states:

"(a)  No order requiring discovery shall be made in criminal cases except as provided in this chapter. This chapter shall be the only means by which the defendant may compel the disclosure or production of information from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties.

"(b)  Before a party may seek court enforcement of any of the disclosures required by this chapter, the party shall make an informal request of opposing counsel for the desired materials and information. If within 15 days the opposing counsel fails to provide the materials and information requested, the party may seek a court order. Upon a showing that a party has not complied with Section 1054.1 or 1054.3 and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure.

"(c)  The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted. The court shall not dismiss a charge pursuant to subdivision (b) unless required to do so by the Constitution of the United States."

In *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304], the court stated that the phrase "intends to call as witnesses at trial" (a phrase which appears in both §§ 1054.1, subd. (a), and 1054.3, subd. (a)) should be construed as referring to a person or persons whom a party "reasonably anticipates it is likely to call" at trial. (*Izazaga, supra*, 54 Cal.3d at p. 376, fn. 11.)  ▮ *Izazaga* also clarified a concept which we think is apparent from a reading of section 1054.1 itself, namely that the name and address of a person whom the prosecuting attorney "intends to call" as a witness at trial must be disclosed to the defense, regardless of whether the prosecuting attorney intends to call that witness as part of the case-in-chief or as a rebuttal witness.[11] The court stated: "[W]e note that the enumeration of a criminal defendant's discovery rights under section 1054.1 does not

---

[11]Due process of law also mandates that the prosecution's intended rebuttal witnesses be disclosed to the defense if the defense is required to disclose the names of defense witnesses to the prosecution. (See *Wardius* v. *Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208], and *Izazaga* v. *Superior Court, supra*, 54 Cal.3d at pp. 372-375.)

*specify* that rebuttal witnesses are included. However, the only reasonable interpretation of the requirement that the prosecution disclose '[t]he names and addresses of persons the prosecutor intends to call as witnesses at trial' is that this section includes both witnesses in the prosecution's case-in-chief and rebuttal witnesses that the prosecution intends to call. The phrase 'at trial' means exactly that—at the trial, not merely during the prosecution's case-in-chief. A like provision of Ohio's discovery scheme was similarly interpreted by the Ohio Supreme Court, which held the requirement that the prosecution disclose the witnesses it 'intends to call at trial' includes 'all witnesses it reasonably anticipates it is likely to call, *whether in its case-in-chief or in rebuttal.*' [Citation.]" (54 Cal.3d at p. 375.)

### B. *The Court Did Not Prejudicially Err in Permitting Souza to Testify*

██ Appellant argues that the court erred in finding that respondent did not violate the reciprocal discovery order. Respondent counters that its belated disclosure was the result of appellant's failure to notify respondent until the Tuesday before the Monday trial (also the Tuesday before Thanksgiving) that appellant intended to call Vaughn as a witness.

As we perceive this case, there are two issues to be addressed: (1) did the court err in finding no violation of the reciprocal discovery order and (2) did the court err in refusing to allow a suppression hearing before Officer Souza testified. We conclude the court did not err in finding no discovery violation. We conclude, as the trial court did in the motion for new trial, that the court should have entertained a suppression motion prior to Officer Souza's testimony. However, appellant was granted a suppression hearing during the motion for new trial. The trial court found the officer's observations were legally gathered and appellant does not challenge this finding. Therefore, we find no prejudice to appellant.

### 1. *The Discovery Order*

Section 1054.7 provides that "[i]f the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred."

Appellant would impose upon respondent an unreasonable obligation that would be an ill-advised precedent for either the defense or the prosecution. Appellant appears to contend that his constitutional right to due process of law is a guarantee that no previously unknown witness will suddenly become known during trial. None of the cases he cites for that proposition so hold, nor should there be such a case.

In *In re Littlefield, supra*, 5 Cal.4th 122, the defense had a name and phone number of a person it was considering calling as a witness at trial. It did not have an address for that person, and thus provided the prosecutor with the name but not the address. The court ordered the defendant to call the witness, obtain her address, and then give the address to the prosecutor. (*Id.* at p. 127.) The defense did not wish to do so. The defense stated that it did not wish to ask the witness for her address and feared that the witness "would be intimidated by the prospect of being contacted by the police department or the district attorney's office." (*Ibid.*) The defense further contended that although it might be obligated to provide the address of the witness if it had the address of the witness, it was not obligated to go and get the address of the witness so that the prosecution could then obtain it from the defense. The California Supreme Court disagreed. The court stated: "Thus, in light of the purpose of the discovery provisions contained in Proposition 115, we conclude that sections 1054.1 and 1054.3 reasonably should be interpreted to require both the prosecution and the defense to disclose the names and addresses of persons whom they intend to call as witnesses at trial, if such information is known or is reasonably accessible. Such a requirement does not impose any unduly exacting or unworkable burden of disclosure. A party must disclose the names and addresses of witnesses who are reasonably accessible to it *only* if the relevant statutes mandate disclosure of such names and addresses. We do not suggest, for example, that a party has a duty to obtain a written statement from a witness, even if the witness is ready and willing to give such a statement." (*In re Littlefield, supra*, 5 Cal.4th at pp. 135-136.) The court added that the likely reason why the Legislature used the phrase "in the possession of the prosecuting attorney" in section 1054.1 "was simply to clarify and confirm that the prosecution has no *general duty* to seek out, obtain, and disclose all evidence that might be beneficial to the defense." (5 Cal.4th at p. 135.)

There is a significant difference between failure to gather evidence immediately or to find all evidence that might subsequently become important and willful failure to comply with discovery orders.

"One of the purposes of the discovery rule itself is to minimize the risk that fabricated testimony will be believed. Defendants who are willing to fabricate a defense may also be willing to fabricate excuses for failing to comply with a discovery requirement. The risk of a contempt violation may seem trivial to a defendant facing the threat of imprisonment for a term of years. A dishonest client can mislead an honest attorney, and there are occasions when an attorney assumes that the duty of loyalty to the client outweighs elementary obligations to the court.

"We presume that evidence that is not discovered until after the trial is over would not have affected the outcome. It is equally reasonable to

presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed. If a pattern of discovery violations is explicable only on the assumption that the violations were designed to conceal a plan to present fabricated testimony, it would be entirely appropriate to exclude the tainted evidence regardless of whether other sanctions would also be merited." (*Taylor* v. *Illinois* (1987) 484 U.S. 400, 413-414 [98 L.Ed.2d 798, 813-814, 108 S.Ct. 646], fn. omitted.)

Thus, there is no general obligation to gather evidence. However, there are conceivable circumstances where a failure to name a witness might be found to be a willful act designed to circumvent discovery rules. We need not address what those circumstances might be. Here there is absolutely nothing in the record that would support a conclusion of willfulness. There was no requirement that the district attorney find a rebuttal witness to Vaughn's testimony. However, section 1054.7 does require immediate disclosure of witnesses who become known within 30 days prior to trial and are intended to be called. Here, that is what the district attorney did. While we would agree that disclosure of the name should not take place simultaneous with calling the witness, appropriate disclosure would have only momentarily preceded the time the officer here was called as a witness.

A trial is not a scripted proceeding. Rather, it is a process which ebbs and flows with emotion and drama as well as stretches of boredom and tedium. However, during the trial process, things change and the best laid strategies and expectations may quickly become inappropriate: witnesses who have been interviewed vacillate or change their statements; events that did not loom large prospectively may become a focal point in reality. Thus, there must be some flexibility. After all, the " 'true purpose of a criminal trial' " is " 'the ascertainment of the facts.' " (*In re Littlefield, supra,* 5 Cal.4th at p. 131.) After hearing a witness, the necessity of a rebuttal witness may become more important. Here, the testimony of Vaughn precipitated further investigation. We find nothing here that constitutes a violation of the discovery order. This does not, however, resolve the problem that is created when a witness is offered who was previously unknown.

### 2. *The Suppression Hearing*

When Officer Souza was called, appellant first argued a violation of the reciprocal discovery order. Had this been so, section 1054.5, subdivision (b) provides an array of sanctions, including "prohibiting the testimony of a witness." Subdivision (c) of section 1054 expressly provides that "[t]he court may prohibit the testimony of a witness . . . only if all other sanctions have been exhausted." (See also *People* v. *Edwards* (1993) 17 Cal.App.4th 1248, 1264-1265 [22 Cal.Rptr.2d 3].)

Such "other sanctions" are described in subdivision (b) of section 1054.5 as "including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness . . . continuance of the matter, or any other lawful order." Therefore, even if the court had heard and denied appellant's suppression motion in midtrial, the court could not have excluded Souza's testimony as a sanction for noncompliance with the immediate disclosure requirements of section 1054.7.

While these sanctions do not come into consideration in the instant case because there was no violation of discovery, they are instructive. One purpose of the sanctions of delaying testimony or continuing the matter is to address prejudice caused by a lack of preparation for the witness. Here, appellant demanded exclusion of Souza's testimony. Exclusion would have been inappropriate. However, what is evident is that once Souza became a witness, the defense was confronted with testimony which was conceivably the result of a violation of appellant's Fourth Amendment rights. Under this circumstance the defense would have to address possible suppression of the evidence. Section 1538.5, subdivision (h) provides: "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial in the municipal, justice, or superior court."

Therefore, the trial court erred in not allowing a suppression hearing prior to the testimony of Souza. As we have noted, at the posttrial suppression hearing the court expressly stated that "[t]he Court found that your objection was a good one." The court also stated: "Having considered that objection and your motion for new trial the Court agrees with you in your motion filed on behalf of the defendant that the Court should have allowed you to make that motion during the trial." The court went on to state that it was of the view that the appropriate remedy for that error was "for the Court at this juncture to hold that 1538.5 motion."

We fail to see how the court's denial of a motion to suppress, a ruling which appellant does not challenge on its merits, did not cure the problem. Had the suppression motion been granted, the court undoubtedly would not have entered judgment against appellant. Had the suppression motion been held in midtrial and denied at that point in time, appellant would have been in the same situation in which he now finds himself, i.e., with the jury having heard Souza's testimony and having considered that testimony in deciding to convict appellant.

In *People* v. *Pinholster* (1992) 1 Cal.4th 865 [4 Cal.Rptr.2d 765, 824 P.2d 571], the California Supreme Court addressed a similar claim for failure to

disclose witnesses under the general concept of due process. The court noted: "It is defendant's burden to show that the failure to timely comply with any discovery order is prejudicial, and that a continuance would not have cured the harm. [Citation.] There is no suggestion that the defense would have been different had defendant been aware of [the witness's] testimony before trial. As a matter of due process there was no suppression of material evidence favorable to the accused, and any failure to timely disclose the witness was harmless and did not undermine the reliability of the proceedings. [Citation.]" (*Id.* at p. 941.) We therefore find no prejudice to appellant under the facts of the present case.

The judgment is affirmed.[12]

Stone (W. A.), Acting P. J., and Vartabedian, J., concurred.

---

[12]Appellant also challenges the constitutionality of the reasonable doubt instruction, CALJIC No. 2.90, premising his argument on the grant of certiorari by the United States Supreme Court in *Sandoval* v. *California* (1993) __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40]. The California Supreme Court has rejected this very challenge to the instruction. (See, e.g., *People* v. *Sims* (1993) 5 Cal.4th 405, 457 [20 Cal.Rptr.2d 537, 853 P.2d 992]; *People* v. *Noguera* (1992) 4 Cal.4th 599, 633-634 [15 Cal.Rptr.2d 400, 842 P.2d 1160]; *People* v. *Sandoval* (1992) 4 Cal.4th 155, 186 [14 Cal.Rptr.2d 342, 841 P.2d 862]; *People* v. *Johnson* (1992) 3 Cal.4th 1183, 1234 [14 Cal.Rptr.2d 702, 842 P.2d 1]; *People* v. *Jennings* (1991) 53 Cal.3d 334, 385-386 [279 Cal.Rptr. 780, 807 P.2d 1009].) Nothing in the granting of certiorari permits this court to deviate from the holdings of the California Supreme Court. (See *In re Edgerly* (1982) 131 Cal.App.3d 88, 91, fn. 1 [182 Cal.Rptr. 235].) We are compelled to reject appellant's challenge to the constitutionality of CALJIC No. 2.90. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)