Filed 5/20/13  P. v. Smith CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT ROY SMITH,<br><br>    Defendant and Appellant. | F063679<br><br>(Fresno Super. Ct. No. F09905046)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Leanne LeMon and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

INTRODUCTION

Robert Roy Smith (defendant) was charged with one count of possession or control of child pornography with a prior.  (Pen. Code, § 311.11, subd. (b).)  The

information also alleged three prior serious felony "strikes."  (Pen. Code § 288, subd. (a) [two prior convictions]; Pen. Code,[1] § 288a, subd. (c)(1) [one prior conviction].)

Defendant eventually admitted the prior conviction allegations.  Following trial, a jury convicted defendant as charged.  The superior court struck one of the strikes and sentenced defendant to a prison term of 25 years to life.

Defendant appeals, contending that "late" disclosures by the prosecution constituted discovery violations and infringed on his right to a fair trial.  Defendant further claims that the exclusion of testimony regarding his prior diagnosis and treatment as a sex offender was error.  We reject both contentions and affirm.

FACTS

*Keri DeAlba's Testimony*

At trial, Keri DeAlba testified that she worked as a behavioral specialist at the Golden Gate Center (the "Center"), which is part of the Vocational Education Center at Coalinga State Hospital.  DeAlba had daily contact with the defendant, who was a patient at the hospital.

The Center itself is a recreation room where patients work on computers, play pool, and use musical instruments.  DeAlba's job duties included monitoring patients' use of the computers to ensure that "everything was appropriate."  Patients were not permitted to view images of any kind on the computers, which were solely for treatment-related work.

On February 26, 2009, DeAlba observed defendant using the same computer he sat at "every day."  DeAlba saw defendant "cycling through" several pictures, including one of an unclothed "little boy," and another of an unclothed "little girl."  Defendant had two "thumb drives" plugged in to the computer's tower.  DeAlba phoned state hospital

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2.

officer[2] Michael Bassi, who was stationed nearby in the vocational center, and told him to come quickly. DeAlba then told defendant to give her his thumb drives. Defendant said, "Please don't. Please, Keri, don't. Please, please don't." DeAlba gave the thumb drives to Officer Bassi. Defendant left with Officers Bassi and Palacios and said, "I'm busted."

*Officer Bassi's Testimony*

The thumb drives were then plugged into the computer of an investigator with the police department's office of special investigations. One of the drives was Emprex brand (the "Emprex drive"). The other drive was Kingston brand (the "Kingston drive").

On the Emprex drive, there were multiple images of young children performing sexual acts. On the Kingston drive, Officer Bassi saw four to five nude pictures of boys and girls. There were other files on the Kingston drive that were not child pornography.

*Officer Bassi's Interview With Defendant*

After leaving the investigator's office, Officer Bassi went to interview defendant. Officer Bassi recorded the interview, and the recording was admitted into evidence at trial.

During the interview, defendant indicated that the "smaller" thumb drive contained "probably four pictures" of "nude children" (i.e., "young girls.") The rest of that drive's contents were files related to defendant's treatment.[3]

Defendant described "the other" drive[4] as being "loaded." Defendant described the drive's contents as follows:

---

[2] See section 830.38.

[3] This was presumably a reference to defendant's treatment at Coalinga State Hospital.

[4] This was clearly a reference to the Emprex drive.

3.

"Well there's [*sic*] a couple of files that have nude boys which are not my interest but that's they, they [*sic*] just happened to be there.  Uh most of them are nude girls uh there's some hard core child porn on there.  In more than one file I can't tell you how many because I don't, I really don't remember."[5]

Defendant later testified at trial that all of the answers he gave in the interview were true.

*Officer Bassi's Testimony Regarding the Kingston Drive*

Officer Bassi also testified as to whether there was child pornography found on the Kingston drive.  His testimony in that regard included the following exchanges:

1.  "[Prosecutor:]     And on the Kingston drive, did you actually see any images or videos on that drive?

    "A        There were images, no videos, on the Kingston drive.

    "Q        Okay. And the images that you saw, do you recall what type of images they were?

    "A        They were four to five nude pictures of boys and girls.

    "Q        Do you recall if any of the pictures in the Kingston drive involved any kind of penetration?

    "A        I don't think so.  They were just nude.  [¶] … [¶]"

2.  "[Defense counsel]:  Now, these thumb drives – and I'm going to kind of jump around a little bit. These thumb drives, 11(a) and 11(b), these are still, I mean, fully loaded with illegal child pornography, right?

    "[Prosecutor]:  Objection.  Calls for speculation.

    "THE COURT:  Overruled. You can answer, sir.

    "THE WITNESS:  They should be, yes.  [¶] … [¶]"

---

[5] The defendant proceeds to describe the acts depicted with greater specificity. There is no dispute that the Emprex drive contained material that constituted child pornography under the relevant statutes.  There is no dispute on appeal that the images on the Kingston drive did not constitute child pornography. Thus, in our view, there is no need to describe the graphic depictions in greater detail.

3. "[Defense counsel:] Okay. So this one given to the phasers is smaller than the Emprex drive. You viewed a little bit, or small material, child pornography material on both of these; is that right?

   "A     That's correct. [¶] … [¶]"

4. "[Defense counsel:] Officer Bassi, the Emprex drive is the lower silver one there, right?

   "A     That's correct.

   "Q     And that is the one that had most of the material, the child pornographic material on it, right?

   "A     Yes.

   "Q     There was also some found on the blue and white drive, that is, the Kingston drive that is assigned to the phasers, right?

   "A     Correct, four to five pictures. [¶] … [¶]"

5. "[Prosecutor:] Would finding pictures of naked children on a drive cause you to want to look to see if there were pictures of sexual acts?

   "A     Yes."

The prosecutor would eventually state during closing argument that the Kingston drive, in fact, had no child pornography on it.

*September 19, 2011, Hearings*

At a hearing outside the presence of the jury on September 19, 2011, defense counsel indicated that the prosecutor had handed him a CD and documents labeled attachments F-K (the "supplemental report"[6]) that morning at 10:39 a.m.[7] The documents were the products of analyses performed by a Detective Wiens. Defense counsel conveyed that he was told (presumably by the prosecutor) that the documents

---

[6] The analysis is more precisely defined as additional attachments to a preexisting report. For convenience, we will refer to the analysis as the "supplemental report."

[7] An original report by Detective Wiens, previously provided to defense counsel, included attachments A through E.

5.

showed how many times the names "Bob, Robert, Robert Smith" appear on the Emprex drive. He was also told that Detective Wiens would be testifying "off" the documents. The prosecutor confirmed that she had "just" handed the information to defense counsel. She said she turned it over "pretty much the moment I received it. If you recall, Mr. Spence did come in and handed some documents to the bailiff, who handed them to me."[8] She confirmed that the reports regarded searches on the Emprex drive for "Bob, Robert Smith, Smith, things of that nature." She also indicated that the documents also showed what files were duplicated between the Emprex drive and the Kingston drive using "hash values."[9] The prosecutor indicated that she had asked for the analysis on the previous Friday "because of [defense] counsel's clear line of questioning going towards the Emprex drive not being the defendant's. And it is clear that is where he is going." The prosecutor further stated that defense counsel had access to the contents of the Emprex and Kingston drives "for over a year."

The court stated that it would allow each side to review the documents. Defense counsel requested that, "[a]t the bare minimum," the court direct that no reference be made to the "additional discovery" until the next morning. After further discussion between counsel and court, it was agreed that Detective Wiens would not testify later that day as planned. Instead, he would testify the next morning.

In a session later that day, the court and counsel again discussed the recently disclosed documents outside the presence of the jury. Defense counsel did not move for a continuance, but did indicate that he would not have time for an expert to look at the material by the next morning. He stated that his client had a right to a fair trial.

---

[8] The trial court confirmed on the record that it observed the detective come in to the courtroom that morning and provide the prosecutor with two manila folders.

[9] The prosecutor explained that "hash value" is an alphanumeric figure assigned to individual computer files (e.g., documents, images). The relevance of the hash values is that they are used to determine whether two files are exact copies of one another.

The prosecutor argued that there was no new information in the supplemental report, which was just a different way to analyze the same material referenced in Detective Wiens's initial report. Defense counsel responded by analogizing the situation to a late disclosure of a spreadsheet in a financial fraud trial:

> "We've got this huge amount of data. But that is fine, I've got access to all this data for a while. But to come up with a new summary of this data, to have new reports of this data this late in time, it does not give me an adequate chance to respond to it …."

The following colloquy between the court and defense counsel ensued:

> "THE COURT: Attachments F through L, which both sides received during the course of the testimony this morning. They were brought into the court, given to Ms. Clinton [prosecutor], and then in turn given to Mr. Baly [defense counsel]. That took place, that Mr. Baly first received them, at about 9:39 this morning. I have not heard anyone represent that this is anything other than an analysis of the search of the content of a digital copy of the thumb drives that each counsel received by way of the discovery. Is there any disagreement with that statement?
>
> "MR. BALY: Could you – I apologize, would you restate the statement? You said list, I think.
>
> "THE COURT: I've heard no one represent that this information is anything other than an analysis of the search of the content of a digital copy of the thumb drives which is contained on the CDs that each counsel received by way of discovery. Is that accurate?
>
> "MR. BALY: I agree…."

The court ruled the supplemental report was admissible, and that the analysis went to ownership of the drives, not content of the drives.[10]

---

**10** On appeal, defendant asserts that the trial court's characterization was incorrect. Specifically, defendant contends: "Here the trial court ruled that the *material in the newly generated reports* 'did not go to the content of the drives.' The trial court was incorrect. The *testimony* given by Detective Wiens did go to the content of the drives." (Italics added.) Defendant creates a straw man by inexplicably equating Detective Wiens's supplemental report with his testimony at trial. The court ruled that the *material in the supplemental report* did not go to the content of the drives. It did not rule that

*Detective Wiens's Testimony*

Detective Wiens testified that he located approximately 1,100 images of child pornography on the Emprex drive. Detective Wiens had seen approximately 80 percent of the images in prior investigations. The images depicted children younger than 18 years old. Detective Wiens also found a video file approximately 47 minutes in length. The video depicted different segments of child pornography videos that Detective Wiens had seen in the past.

The Emprex drive also contained approximately 10,000 text and Power Point documents. Detective Wiens searched the properties and content portions of the files for certain strings like "Bob" and "Robert." Detective Wiens found 295 documents with the name "Bob" either in the properties or body of the documents.[11] By comparing the hash values of various files, Detective Wiens determined that 6,200 of the exact same files were found on both the Emprex and Kingston drives.

Detective Wiens testified that there was no child pornography on the Kingston drive.[12]

*Defendant's Testimony*

Defendant testified that another patient gave him a CD or a DVD with child pornography on it. The patient told him, "There's some good stuff on here you might want to see." Defendant understood that the CD contained "child pornographic material." He viewed the video contained on the CD and looked at between 1,000 to

Detective Wiens's *testimony*, which had not even been given yet, would never touch on the contents of the drives.

[11] Detective Wiens also found 23 documents with "Robert," 189 documents with "Smith," 13 documents with "Robert Smith," 5 with the name "Bobby," and 126 documents with "Bob Smith."

[12] Defense counsel would later indicate at closing argument that the fact the Kingston drive had no child pornography first "crystallized" for him with Detective Wiens's testimony.

2,000 images. He saw that the CD contained child pornography. He later transferred the CD's contents to his Emprex drive. Thus, on February 26, 2009, "the files with the pornography" were on the Emprex drive.

Defendant was asked about what he was doing on February 26, 2009, when he was "caught." He testified that he was opening the images and separating them by what he liked and what he did not like. He did not want images of boys, only young girls. The images he wanted to keep, he transferred to the Kingston drive.

*Dr. Zinik's Proferred Testimony*

In pre-trial briefing, the defense indicated that it intended to call Dr. Gary Zinik as a witness to testify "to the nature of [defendant's] commitment at Coalinga State Hospital, his diagnosis and the nature of the treatment program at the hospital."

The prosecution moved to exclude Dr. Zinik's testimony. The trial court granted the motion, subject to reconsideration if "further issues" came up during trial. The court ruled that it was not relevant why defendant possessed the child pornography, nor "where he possessed it, what his intent was when he possessed it, what his diagnosis may have been at the time he possessed it."

Dr. Zinik never testified.

*September 20, 2011, Hearing*

During trial, in a hearing outside the presence of the jury, the court considered whether to give a CALCRIM 306 instruction (Untimely Disclosure of Evidence). Defense counsel stated that he did not know Detective Wiens believed there was no child pornography on the Kingston drive because it was not stated in his report. The prosecutor argued that CALCRIM 306 should not be given absent bad faith on the part of the prosecution. The prosecutor also argued that the issue came up at the preliminary hearing. She cited page 75, lines 14-17 of the preliminary hearing transcript, which states:

9.

"[Prosecutor:] Do you recall whether there are any photos on the Kingston drive that had oral, vaginal, or anal penetration?

"[Detective Wiens:] I don't recall that drive having that type of material."

The court ruled that there was no discovery violation. As to the preliminary hearing, the court stated: "[w]hat seems to be missing was a very direct question asked of a witness as the preliminary hearing, or during the course of preparing for trial, when counsel could have been made aware – and I mean both counsel, either counsel, could have been made aware that there was nothing contained on the Kingston drive." The court further ruled that "the discovery which the People were to provide were the documents themselves, any written reports of the officer, or any oral reports of the officer. And it appears, frankly, that those oral reports were made today …." The court refused the CALCRIM 306 instruction. The court did agree with defense counsel that CALCRIM 306 does not require bad faith by the prosecution.

*Sentencing Hearing*

At the sentencing hearing, counsel and the court discussed a letter written by one of the jurors.[13] The letter requests leniency for defendant during sentencing.[14] The letter included the following text:

> "The second element of the case so stated is: 'When the defendant acted, he or she knew the character of the matter[.]' Mr. Smith stated in his testimony stated [*sic*] that he would review the material. What he wanted to keep he would transfer over to the Kingston drive. What he didn't wanted [*sic*] he deleted by clicking the button and it would disappear from the screen. The point is if he thinks he deleted the material and he in fact did not. Then at that point, he doesn't know the character of the matter and the second element goes unproven. There is in my opinion circumstantial evidence to prove this. Note: His issued Kingston Drive

---

[13] Defendant's appeal does not concern his sentence. However, defendant argues that the letter from the juror has a bearing on the substantive issues raised on appeal.

[14] The letter was ostensibly written to request sentencing leniency. However, the request is based on the juror's apparent regret in voting to convict as evidenced by the quoted text.

10.

has no child porn on it. Concerning the video, we saw, Mr. [S]mith said, he saw it. But that doesn't mean that he didn't think he deleted it. Which in his mind would constitute not have [*sic*] knowledge of its presents [*sic*]. That is if I thought it was not there. It's like two tanks and Mr. [S]mith acting as filter, in his mind, when he sees something he like [*sic*], he transfers or copies it over to the other take [*sic*]. Detective Weins [*sic*] testified that he found duplicate objects of files on both drives, but no porn on one drive. To me this is good evidence that point [*sic*] to reasonable doubt."

The trial court acknowledged receipt of the letter, and then proceeded to pronounce the sentence. The court exercised its discretion in striking one of the prior serious felonies for sentencing purposes only. The court sentenced defendant to a base term of 25 years to life.

## ANALYSIS

Appellant raises two issues on appeal.[15] First, he argues that late discovery by the prosecution "led to"[16] prejudicially inaccurate testimony regarding whether the Kingston drive contained child pornography. Second, he claims the trial court erred by excluding evidence of his prior diagnosis and treatment as a sex offender.

---

[15] The first issue raised by defendant actually expresses multiple issues. We count at least four express claims of error in defendant's first issue on appeal: (1) that the court abused its discretion in admitting Detective Wiens's report ; (2) erroneous testimony of Officer Bassi at trial misled the jurors ; (3) erroneous testimony by Detective Wiens at the preliminary hearing deprived defendant of a viable defense to the charges ; and (4) late disclosure that the Kingston drive contained no child pornography violated due process.

[16] Defendant repeatedly states that Detective Wiens's supplemental report disclosed at trial is causally related to his testimony that the Kingston drive did not contain pornography. We do not see the causal relationship between the supplemental report and Detective Wiens's testimony about the lack of child pornography on the Kingston drive. The supplemental report concerned authorship metadata and hash values that connected the Emprex and Kingston drives to each other and to defendant. There is no suggestion that the supplemental report dealt with a qualitative evaluation of whether the images and video on Kingston drive constituted child pornography. In other words, we see nothing in the record that suggests Detective Wiens's testimony that the Kingston drive contained no child pornography was based on the analysis contained in the supplemental report.

11.

# I.
## THE ALLEGEDLY LATE DISCLOSURE OF DETECTIVE WIENS'S REPORT DOES NOT WARRANT REVERSAL

### A.

### STANDARD OF REVIEW

Though stylized as a single issue, defendant actually asserts multiple assignments of error regarding the allegedly late discovery.  There are important distinctions between the separate issues.  For example, the duty to disclose substantial material evidence to the defense is distinct from the duty to correct false or misleading testimony.  (*In re Jackson* (1992) 3 Cal.4th 578, 595, disapproved on other grounds by *In re Sassounian* (1995) 9 Cal.4th 535, 545, fn. 6.)  The allegedly false testimony regarding whether the Kingston drive contained child pornography implicates, if anything, a prosecutor's duty to correct certain false or misleading testimony.  (See *In re Jackson*, *supra*, 3 Cal.4th at p. 595 disapproved on other grounds by *In re Sassounian*, *supra*, 9 Cal.4th at p. 545 fn. 6.)  Conversely, the allegedly late disclosure of Detective Wiens's report implicates, if anything, statutory discovery obligations under section 1054.1 and the duty to disclose evidence.

Untangling these issues is not merely an academic exercise.  The distinctions are important because they trigger significantly different standards of review.  When prosecutors knowingly fail to correct the false or misleading testimony of their witness, reversal is required if there is any reasonable likelihood the false testimony could have affected the judgment of the jury.  (*People v. Dickey* (2005) 35 Cal.4th 884, 909.)[17]  But violations of discovery obligations in section 1054.1 are reviewed under the more

---

[17] "This standard is functionally equivalent to the 'harmless beyond a reasonable doubt' standard of *Chapman v. California* (1967) 386 U.S. 18." (*Dickey*, *supra*, 35 Cal.4th at p. 909.)

deferential harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Verdugo* (2010) 50 Cal.4th 263, 280.)

B.

1. THERE WAS NO *BRADY* VIOLATION

We will address the simplest issue first:  whether there was a *Brady*[18] violation. Evidence ultimately presented at trial is not considered suppressed for *Brady* purposes, even if the evidence was not disclosed during discovery.  (*People v. Verdugo*, *supra*, 50 Cal.4th at p. 282.  See also *People v. Morrison* (2004) 34 Cal.4th 698, 715.)  All of the relevant evidence identified by defendant was presented at trial (e.g. Detective Wiens's report and testimony).  There was no *Brady* violation.[19]

2. THE COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING DETECTIVE WIENS'S REPORT

A prosecutor must disclose expert reports to the defendant or defense counsel. (§ 1054.1, subd. (f).)  There are two statutory time limitations for section 1054.1 disclosures.  (§ 1054.7.)  One applies to "material and information" that "becomes known to, or comes into the possession of, a party within 30 days of trial."  (*Ibid.*)  For this type of material and information, disclosure must be generally occur "immediately."  (*Ibid.*) Other disclosures must be made at least 30 days prior to trial, unless good cause is shown. (*Ibid.*)  Detective Wiens's report is the first type of evidence (i.e., "material" that came "into the possession" of the prosecutor within 30 days of trial).  Therefore, section 1054.7

---

[18] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

[19] Moreover, a prosecutor's *Brady* obligation may, under proper circumstances, be satisfied when defense counsel is free to examine all materials regarding the case that are in the prosecutor's possession.  (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1134-1135, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) The prosecutor noted at one of the hearings that the thumb drives "had been made available" to defense counsel "for a long period of time."  Thus, the record indicates that defense counsel was free to analyze the source files for hash tags and authorship metadata well before trial.

required the prosecutor to disclose the report "immediately," which she did. Because the prosecution complied with section 1054.7, the disclosure was not late. (§ 1054.7. See also *People v. Rutter* (2006) 143 Cal.App.4th 1349, 1353-1354; *People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1759 ["there is a distinction between having evidence and refusing to disclose, and discovering evidence and disclosing it at a time when it places the other side at a disadvantage."].)

As we explained in *People v. Hammond* (1994) 22 Cal.App.4th 1611 (*Hammond*), the prosecution does not have a "general obligation to gather evidence." (*Id.* at p. 1624.) And, there is "a significant difference between failure to gather evidence immediately or to find all evidence that might subsequently become important[,] and willful failure to comply with discovery orders." (*Id.* at p. 1623.) The trial court's ruling was precisely in-line with our observations in *Hammond*:

> "A trial is not a scripted proceeding.… [D]uring the trial process, things change and the *best laid strategies and expectations may quickly become inappropriate … events that did not loom large prospectively may become a focal point in reality*. Thus, there must be some flexibility. After all, the ' "true purpose of a criminal trial" ' is ' "the ascertainment of the facts." ' [Citation]" (*Id*. at p. 1624, italics added.)

Thus, "[a]fter hearing a witness, the necessity of a rebuttal witness may become more important." (*Hammond*, *supra*, 22 Cal.App.4th at p. 1624.) Similarly, after a perceived change in defense strategy, additional analysis by Detective Wiens became more important to the prosecution.

The trial court was in the best position to evaluate these considerations. Because the trial court's ruling was well within the bounds of its discretion, we will not disturb it.

## 3. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING THE TESTIMONY OF DETECTIVE WIENS REGARDING THE REPORT

Defendant also argues that Detective Wiens's testimony constituted a "last minute" disclosure of the "exculpatory evidence" that the Kingston drive did not contain pornography.

The evidence that the Kingston drive did not contain child pornography was (1) the drive's contents, and (2) the testimony of Detective Wiens that there was no child pornography on the Kingston drive. Nothing in the record suggests that the contents of the Kingston drive were not disclosed well before trial. And, Detective Wiens's testimony was, by definition, disclosed to the defense "immediately" as it was spoken into existence. [20] (§ 1054.7.) Thus, the testimony could not have been "disclosed" any earlier than it was.

## 4. THE VARIOUS PORTIONS OF OFFICER BASSI'S TESTIMONY CITED BY DEFENDANT FALL INTO TWO CATEGORIES, NEITHER OF WHICH WARRANT REVERSAL: (1) TESTIMONY THAT WAS NOT FALSE OR MISLEADING; AND (2) TESTIMONY THAT WAS CORRECTED BY THE PROSECUTOR

Defendant argues that testimony by Officer Bassi "misled the jurors." Much of the allegedly misleading testimony cited by defendant is not conceivably false or misleading. The remainder of Officer Bassi's cited testimony, which may arguably be misleading, was corrected by the prosecutor.

### a. *Testimony that Kingston Drive Contained "Four or Five" Nude Pictures of Children*

Defendant argues that Officer Bassi's testimony that the Kingston drive contained "four or five" nude pictures of children reinforced the conclusion that the Kingston drive

---

[20] The trial court made a similar observation, noting that "the discovery which the People were to provide were the documents themselves, any written reports of the officer, or any oral reports of the officer. And it appears, frankly, that those oral reports were made today [at trial] …."

contained child pornography.  Defendant does not show how this testimony is false.  To the contrary, the testimony is consistent with the interview recording played at trial in which *defendant* told Officer Bassi there were four to five images of nude children on the Kingston drive.  Defendant cites no evidence contradicting the presence of four to five images of nude children on the Kingston drive.

Nor does defendant show how this testimony "reinforced" the conclusion that the Kingston drive contained child pornography.  Officer Bassi later testified that pictures of naked children not performing sexual acts would not be child pornography.

The only conclusion reinforced by the cited testimony was that the Kingston drive contained four or five images of naked children.  Defendant cites nothing in the record to lead us to believe this conclusion was erroneous.

b. *Officer Bassi's Testimony that Pictures of Naked Children Would Lead Him to Search Further to Determine if There Were Pictures of Sexual Acts*

Defendant also argues:

> "Redirect examination by the prosecutor also reinforced the impression that both drives contained pornography.  She asked Officer Bassi if he reviewed pornographic files from the Emprex drive, and he said yes.…  Then[,] *when he agreed that naked pictures of children on the Kingston drive were not pornography*, he responded affirmatively to Ms. Clinton when she asked, 'Would finding pictures of naked children on a drive cause you to want to look to see if there were pictures of sexual acts?…' "  (Italics added, citations omitted.)

There is no indication this testimony was false or misleading.  If finding pictures of naked children on a drive would cause Officer Bassi to want to see if there were also pictures of sexual acts, then an affirmative response to the question was the only truthful one he could have given.  Defendant cites no evidence that in fact finding pictures of naked children did *not* make Officer Bassi want to see if there were also pictures of sexual acts.  Indeed, the desire to investigate further was eminently reasonable once Officer Bassi saw pictures of naked children.  Absent evidence that it was false or misleading, this portion of Officer Bassi's testimony is not grounds for reversal.

16.

c. *Officer Bassi's Testimony that the Kingston Drive Contained Child Pornography*

Defendant's most colorable argument regarding misleading testimony relates to the following three exchanges, where Officer Bassi indicates that some child pornography was found on the Kingston drive:

1. "[Defense counsel]: Now, these thumb drives – and I'm going to kind of jump around a little bit. These thumb drives, 11(a) and 11(b), these are still, I mean, fully loaded with illegal child pornography, right?

"[Prosecutor]: Objection. Calls for speculation.

"THE COURT: Overruled. You can answer, sir.

"THE WITNESS: They should be, yes. [¶] … [¶]"

2. "[Defense counsel:] Okay. So this one given to the phasers is smaller than the Emprex drive. You viewed a little bit, or small material, child pornography material on both of these; is that right?

"A        That's correct. [¶] … [¶]"

3. "[Defense counsel:] Officer Bassi, the Emprex drive is the lower silver one there, right?

"A        That's correct.

"Q        And that is the one that had most of the material, the child pornographic material on it, right?

"A        Yes.

"Q        There was also some found on the blue and white drive, that is, the Kingston drive that is assigned to the phasers, right?

"A        Correct, four to five pictures."

In these exchanges, Officer Bassi does indicate that child pornography was found on the Kingston drive. As the prosecutor indicated at closing argument, this was incorrect.

Prosecutors are not responsible for all erroneous testimony offered by their witnesses. (See, e.g., *People v. Riel* (2000) 22 Cal.4th 1153, 1211-1212.) Rather, the

17.

prosecutor's duty is to correct any testimony of prosecution witnesses it knows or should know is false or misleading. (*People v. Vines* (2011) 51 Cal.4th 830, 873; *In re Jackson*, *supra*, 3 Cal.4th at p. 597.) Here, the prosecutor did correct the testimony.

After Officer Bassi testified, the prosecutor elicited testimony from Detective Wiens that he did not believe the images on the Kingston drive were child pornography, and that all of the child pornography was found on the Emprex drive. Moreover, the prosecutor stated unequivocally at closing argument that, "the Kingston drive does not have child pornography on it." (Cf. *People v. Marshall* (1996) 13 Cal.4th 799, 830 [noting that falsity of witness's testimony not concealed from jury because prosecutor made clear in closing argument that witness's testimony was incorrect].) To the extent the prosecutor had a duty to correct Officer Bassi's testimony regarding child pornography on the Kingston drive, she satisfied that duty.

II.
THE TRIAL COURT DID NOT ABUSE ITS DISCRETION
IN RULING THAT EVIDENCE ABOUT DEFENDANT'S PRIOR
DIAGNOSIS AND TREATMENT WAS INADMISSIBLE

Defendant also contends that the trial court erred in excluding evidence of defendant's prior diagnosis and treatment as a sex offender under Evidence Code section 352. We review such rulings for abuse of discretion, and will only reverse where the lower court's ruling is arbitrary, capricious or patently absurd. (*People v. Thomas* (2012) 53 Cal.4th 771, 806.)

Defendant claims that the court abused its discretion by excluding testimony "about appellant's diagnosis and treatment as a sex offender." This testimony, defendant argues, would have been "relevant to the issue of acting 'knowingly' at the time of the offense." Specifically, his "intent could have been consistent with embracing his fantasies in accord with his treatment." As we will explain, this contention confuses intent with motive, and distorts the nature of section 311.11's "knowing" mental state requirement.

18.

## A.
## EVIDENCE OF DEFENDANT'S MOTIVE IS IRRELEVANT

" 'Motive describes the reason a person chooses to commit a crime. The reason, however, is different from a required mental state such as intent .…' " (*People v. Wilson* (2008) 43 Cal.4th 1, 22.)

Section 311.11, subdivision (a) states, in part:

> "Every person who *knowingly possesses or controls* any matter, representation of information, data, or image, including, but not limited to, any … photograph, … computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, *knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct*, as defined in subdivision (d) of Section 311.4, is guilty of a felony .…" (§ 311.11, subd.(a), italics added.)

Section 311.11 has no motive requirement, only a mental state requirement that the defendant knew he/she possessed or controlled child pornography.[21]

To embrace one's fantasies is a possible reason a person may choose to commit a crime. It is a motive. Conversely, knowing that you possess certain images or videos depicting minors participating in or simulating sex relates to a mental state. (Cf. § 29 [knowledge is a mental state].) A motive is different from a mental state, *Wilson*, *supra*, 43 Cal.4th at p. 22, and a violation of section 311.11 requires the latter, not the former.

This is why two individuals could have different motives but the same "knowing" mental state. For example, a distributor may knowingly possess child pornography for pecuniary gain. An addict may knowingly possess child pornography for personal use.

---

[21] See § 311.11; CALCRIM 1141 [Element 3: "When the defendant acted, (he/she) knew that the matter showed a person under the age of 18 years who was personally participating in or simulating sexual conduct"]. Cf. *People v. Kurey* (2001) 88 Cal.App.4th 840, 849 [assuming with discussing that it must be proven that defendant "had knowledge that the matter depicted a person under the age of 18 years personally engaging in or simulating sexual conduct .…"].

Both individuals violate section 311.11 because they "knowingly possess[ed]" the pornography, regardless of their reason for doing so. Evidence about their particular motive is not dispositive – or even relevant – to whether section 311.11 has been violated.[22]

So, defendant very well may have knowingly possessed child pornography for the purpose of embracing his fantasies in accord with his treatment. However, such a motive, even if established and accepted by the jury, would not have negated defendant's knowledge that the images he possessed were child pornography.[23] Because defendant knowingly possessed or controlled the child pornography, it is not relevant why he did so.

The trial court did not deprive defendant of his right to present a defense by excluding irrelevant evidence. (See *People v. Thornton* (2007) 41 Cal.4th 391, 444-445.)

## B.
## DEFENDANT'S APPEAL TO "EQUITABLE" CONSIDERATIONS DOES NOT WARRANT REVERSAL

Defendant argues that the jury should have been allowed to consider the decision to prosecute him, because he was making a "good faith effort to progress" and "had not harmed a third party." Both contentions are arguable. Even if they were not, reversal would not be warranted.

" 'The district attorney's function is quasi-judicial in nature [citation], and ... he is vested with discretionary power in determining whether to prosecute in any particular case. *An unbroken line of cases in California* has recognized this discretion and its

---

[22] This is in contrast to the crime of possessing child pornography *with intent to distribute*, which requires *two* mental states: (1) knowing possession *and* (2) *a specific intent to do a further act* (e.g., distribute). (*People v. Young* (1977) 77 Cal.App.3d Supp. 10, 13.) In such a case, evidence as to why defendant possessed the child pornography would presumably be relevant.

[23] To the contrary, such a motive would support the requisite level of knowledge. How could defendant possess child pornography for the purpose of embracing his fantasies unless he knew the nature of the images to be consistent with those fantasies?

insulation from control by the courts.…' [Citation.]" (*Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1543.) Thus, "under the doctrine of separation of powers, courts must scrupulously avoid interfering with the executive's prosecutorial function, including the exercise of its broad charging discretion." (*People v. Cortes* (1999) 71 Cal.App.4th 62, 79.)

The judiciary's concern is that the prosecutor had probable cause to believe the accused committed an offense. Other considerations beyond that foundational requirement are left to the discretion of the prosecutor, not courts or juries. (See *People v. Thomas* (2012) 54 Cal.4th 908, 950-951 (conc. opn. of Werdegar, J.).) " '[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file … generally rests entirely in his discretion.' [Citation.]" (*Ibid.*) It is not for us (or the jury) to decide the circumstances under which a prosecutor should exercise discretionary charging leniency.

DISPOSITION

The judgment is affirmed.


_____<br>Poochigian, J.

WE CONCUR:


_____
Wiseman, Acting P.J.


_____
Gomes, J.

21.